CHIEF OF POLICE, HARTFORD POLICE DEPARTMENT *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(SC 16092)

Borden, Katz, Callahan, Vertefeuille and Flynn, Js.

Argued December 1, 1999—officially released March 14, 2000

*Ivan A. Ramos*, assistant corporation counsel, with whom, on the brief, was *Kevin G. Dubay*, corporation counsel, for the appellant (plaintiff).

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Richard Blumenthal*, attorney general, and *Carolyn K. Querijero* and *Eliot D. Prescott*, assistant attorneys general, filed a brief for the attorney general as amicus curiae.

*John M. Bailey*, chief state's attorney, and *Timothy J. Sugrue*, senior assistant state's attorney, filed a brief for the division of criminal justice as amicus curiae.

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

BORDEN, J. The principal issue in this certified appeal involves the meaning and scope of General Statutes § 1-213 (b), which provides in pertinent part: "Nothing in the Freedom of Information Act shall be deemed in any manner to: (1) . . . limit the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state . . . ."[1] Following our grant of certification,[2] the plaintiff, the chief of

[1] General Statutes § 1-213 provides: "Agency administration. Disclosure of personnel, birth and tax records. Judicial records and proceedings. (a) The Freedom of Information Act shall be:

"(1) Construed as requiring each public agency to open its records concerning the administration of such agency to public inspection; and

"(2) Construed as requiring each public agency to disclose information in its personnel files, birth records or confidential tax records to the individual who is the subject of such information.

"(b) Nothing in the Freedom of Information Act shall be deemed in any manner to:

"(1) Affect the status of judicial records as they existed prior to October 1, 1975, nor to limit the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state; or

"(2) Require disclosure of any record of a personnel search committee which, because of name or other identifying information, would reveal the identity of an executive level employment candidate without the consent of such candidate."

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issues: "1. Whether the Appellate Court properly required the disclosure of documents pertaining to a matter in litigation before the federal court, despite General Statutes (Rev. to 1997) § 1-19b (b) (1), which provides that the disclosure requirements of the Freedom of Information Act shall not 'limit the rights of litigants . . . under the laws of discovery?'

"2. Whether the trial court was barred from applying the Freedom of Information Act to the present case because the legal matter in question was 'otherwise provided by federal law?'" *Chief of Police* v. *Freedom of Information Commission*, 248 Conn. 914, 734 A.2d 564 (1999).

police of the Hartford police department, appeals from the judgment of the Appellate Court affirming the judgment of the trial court. The trial court had dismissed the plaintiff's administrative appeal from an order of the named defendant, the freedom of information commission,[3] requiring the disclosure of certain documents involving an internal affairs investigation of the Hartford police department, which had been the subject of discovery proceedings in the United States District Court for the District of Connecticut.

The plaintiff claims that the documents in question were exempt from disclosure under the Freedom of Information Act (act) because: (1) to require their disclosure would limit the rights of the plaintiff as a litigant under the laws of discovery in violation of § 1-213 (b) (1); and (2) the question of their disclosure was governed by the Federal Rules of Civil Procedure and, therefore, they were exempt from the provisions of the act pursuant to General Statutes § 1-210 (a), which makes the act inapplicable where " 'otherwise provided by any federal law . . . .' "[4] We disagree with both

General Statutes § 1-19b (b) (1) has been transferred to § 1-213 (b) (1). Moreover, the specific statutory section quoted in the second certified question was, at the time, General Statutes (Rev. to 1997) § 1-19. That section has been transferred to General Statutes § 1-210 (a). We therefore refer throughout this opinion to §§ 1-213 (b) (1) and 1-210 (a) as the applicable statutes.

[3] Terence P. Sexton, an attorney who was the applicant before the freedom of information commission for disclosure of the documents in question, also was named as a defendant in the trial court. He has not participated in this appeal. We therefore refer herein to the commission as the defendant.

[4] General Statutes § 1-210 provides in relevant part: "Access to public records. Exempt records. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or

claims and, accordingly, we affirm the judgment of the Appellate Court.

Terence P. Sexton made a request under the act for the plaintiff to provide him with copies of certain reports of the internal affairs division of the Hartford police department. Upon the plaintiff's refusal to provide the reports, Sexton filed this complaint with the defendant. The defendant ordered the plaintiff to provide Sexton with the reports, and further ordered that "[h]enceforth, the [plaintiff] shall strictly comply with the public records requirements set forth in [General Statutes §§ 1-212 and 1-210 (a)]."[5] The plain-

place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the Secretary of the State, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings. . . ."

[5] General Statutes § 1-212 provides: "Copies of public records, fees. (a) Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. The fee for any copy provided in accordance with the Freedom of Information Act:

"(1) By an executive, administrative or legislative office of the state, a state agency or a department, institution, bureau, board, commission, authority or official of the state, including a committee of, or created by, such an office, agency, department, institution, bureau, board, commission, authority or official, and also including any judicial office, official or body or committee thereof but only in respect to its or their administrative functions, shall not exceed twenty-five cents per page; and

"(2) By all other public agencies, as defined in section 1-200, shall not exceed fifty cents per page. If any copy provided in accordance with said Freedom of Information Act requires a transcription, or if any person applies for a transcription of a public record, the fee for such transcription shall not exceed the cost thereof to the public agency.

"(b) The fee for any copy provided in accordance with subsection (a) of section 1-211 shall not exceed the cost thereof to the public agency. In determining such costs for a copy, other than for a printout which exists at the time that the agency responds to the request for such copy, an agency may include only:

"(1) An amount equal to the hourly salary attributed to all agency employees engaged in providing the requested computer-stored public record,

tiff appealed from that order to the trial court, which dismissed the appeal. The plaintiff appealed from the

including their time performing the formatting or programming functions necessary to provide the copy as requested, but not including search or retrieval costs except as provided in subdivision (4) of this subsection;

"(2) An amount equal to the cost to the agency of engaging an outside professional electronic copying service to provide such copying services, if such service is necessary to provide the copying as requested;

"(3) The actual cost of the storage devices or media provided to the person making the request in complying with such request; and

"(4) The computer time charges incurred by the agency in providing the requested computer-stored public record where another agency or contractor provides the agency with computer storage and retrieval services. Notwithstanding any other provision of this section, the fee for any copy of the names of registered voters shall not exceed three cents per name delivered or the cost thereof to the public agency, as determined pursuant to this subsection, whichever is less. The Department of Information Technology shall monitor the calculation of the fees charged for copies of computer-stored public records to ensure that such fees are reasonable and consistent among agencies.

"(c) A public agency may require the prepayment of any fee required or permitted under the Freedom of Information Act if such fee is estimated to be ten dollars or more. The sales tax provided in chapter 219 shall not be imposed upon any transaction for which a fee is required or permissible under this section or section 1-227.

"(d) The public agency shall waive any fee provided for in this section when:

"(1) The person requesting the records is an indigent individual;

"(2) The records located are determined by the public agency to be exempt from disclosure under subsection (b) of section 1-19; or

"(3) In its judgment, compliance with the applicant's request benefits the general welfare.

"(e) Except as otherwise provided by law, the fee for any person who has the custody of any public records or files for certifying any copy of such records or files, or certifying to any fact appearing therefrom, shall be for the first page of such certificate, or copy and certificate, one dollar; and for each additional page, fifty cents. For the purpose of computing such fee, such copy and certificate shall be deemed to be one continuous instrument.

"(f) After consultation with the chairman of the Freedom of Information Commission, a representative of the Connecticut Conference of Municipalities and a representative of the Council of Small Towns, the Secretary of the State shall propose a fee structure for copies of public records provided in accordance with the sections set forth in subsection (a) of this section, and submit such proposal to the General Assembly not later than January 15, 1995."

See footnote 4 of this opinion for the text of § 1-210 (a).

trial court's judgment to the Appellate Court, which affirmed the judgment. *Chief of Police* v. *Freedom of Information Commission*, 52 Conn. App. 12, 18, 724 A.2d 554 (1999). This certified appeal followed.

The facts and procedural history are undisputed. Sexton is an attorney who represented Carmen Delia Soto. In February, 1995, Sexton requested from the plaintiff copies of all " 'documents, reports and memoranda concerning any Internal Affairs or Patrol Operations Division investigations relating to Officer Raymondo Diaz' . . . ." Shortly thereafter, Sexton filed a civil action, in the United States District Court for the District of Connecticut, on behalf of Soto against the city of Hartford and Diaz alleging violations of Soto's civil rights.[6]

In May, 1995, the plaintiff declined to comply with Sexton's freedom of information request on the ground that the requested records were exempt from disclosure pursuant to § 1-213 (b) (1).[7] In June, 1995, Sexton filed this complaint with the defendant.

In the then pending civil action in the federal court, Sexton filed a discovery request for production of documents relating to Diaz, including " 'Internal Affairs reports or investigations.' " The city objected to the discovery request, and no further action was taken with respect thereto.

In May, 1996, the defendant rejected the plaintiff's claim of exemption from the act, ordered the plaintiff to provide Sexton with the requested records, and further ordered that "[h]enceforth, the [plaintiff] shall strictly

[6] All references to Sexton throughout this opinion are to Sexton acting on behalf of Soto.

[7] The plaintiff also claimed that the records were exempt as "[p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy" under General Statutes (Rev. to 1995) § 1-19 (b) (2). That section has been transferred to § 1-210 (b) (2). The defendant ultimately rejected that claim, and it is not before us in this appeal.

comply with the public records requirements set forth in [the act and § 1-210 (a)]." The plaintiff appealed from that order to the trial court.

Prior to the hearing in the trial court, the federal civil action was settled and withdrawn. Nonetheless, the trial court correctly determined that the case was not moot because of the order by the defendant that the plaintiff henceforth must comply with § 1-210 (a) regarding such records. See *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 8–9, 688 A.2d 314 (1997). The trial court rejected the plaintiff's claim that the records were exempt from disclosure pursuant to § 1-213 (b) (1), and dismissed the appeal.

The plaintiff appealed from that judgment to the Appellate Court, claiming that § 1-213 (b) (1) "provides an exemption from disclosure under the act if the same records have also been sought through the use of the discovery process in civil litigation." *Chief of Police* v. *Freedom of Information Commission*, supra, 52 Conn. App. 15. The Appellate Court focused on the language of § 1-213 (b) (1), namely, that "[n]othing in the Freedom of Information Act shall be deemed in any manner to . . . *limit* the rights of litigants . . . under the laws of discovery of this state . . . ."[8] (Emphasis added.) Reasoning that the "right of a litigant to discovery is primarily the right to obtain information"; *Chief of*

---

[8] Curiously, neither the Appellate Court nor the parties has focused on the last three of the final eight words of § 1-213 (b) (1), namely, "under the laws of discovery *of this state* . . . ." (Emphasis added.) The only amicus curiae to focus on this language, namely, the Connecticut Conference of Municipalities, argues that " 'laws of discovery of this state' " includes federal law because of the supremacy clause of the United States constitution. This argument notwithstanding, it is difficult to see how discovery procedures in a federal action, which are governed by the Federal Rules of Civil Procedure, would come within that language. In view of our broader conclusion regarding the meaning of § 1-213 (b) (1); see part I of this opinion; however, we do not rest our decision on that ground.

*Police* v. *Freedom of Information Commission,* supra, 16; and relying on the fact that in 1994, the legislature, in the wake of our decision in *Gifford* v. *Freedom of Information Commission,* 227 Conn. 641, 631 A.2d 252 (1993), had changed the word "affect" to "limit" in § 1-213 (b) (1); *Chief of Police* v. *Freedom of Information Commission,* supra, 17; the Appellate Court concluded that § 1-213 (b) (1) "should be interpreted as prohibiting the use of the act to *restrict* the rights of parties seeking information through discovery." (Emphasis added.) Id., 17–18. Thus, in the Appellate Court's view, § 1-213 (b) (1) operates as an exemption in only one direction: it cannot limit or restrict a litigant's right to *seek* discovery of documents; but at the same time, it cannot be used as a source of exemption from the act by a litigant who seeks to *resist* discovery. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 18.

In this court, the plaintiff claims that the Appellate Court's judgment is flawed in two respects. First, the plaintiff claims that the Appellate Court's interpretation of § 1-213 (b) (1) is improper because "requiring the disclosure of these documents would limit its right as a litigant under the laws of discovery, particularly since these documents were not discoverable in the Federal Court litigation."[9] Second, the plaintiff claims that the act is entirely inapplicable to the request filed by Sexton

---

[9] The amici curiae present some variations on the theme that the Appellate Court's interpretation of § 1-213 (b) (1) is flawed. As we indicate in the text of this opinion, however, our conclusion, although consistent with that of the Appellate Court, does not rest on its precise statutory analysis. Nonetheless, to the extent that the arguments of the amici involve the proper interpretation of the statute, we have taken them into account. One amicus, however, the division of criminal justice, also argues that, unless the act is interpreted to mean that questions of criminal discovery trump disclosure under the act, the act would violate the separation of powers doctrine as embodied in both the federal and state constitutions. We decline to consider this argument because: (1) ordinarily we do not consider new questions raised only by an amicus curiae; see *In re Bruce R.,* 234 Conn. 194, 215 n.16, 662 A.2d 107 (1995); and (2) it is not raised by the facts of the present case.

"because the legal matter in question was 'otherwise provided by . . . federal law,'" namely, the Federal Rules of Civil Procedure, as provided by § 1-210 (a). See footnote 4 of this opinion.

We reject both claims. We conclude that the language of § 1-213 (b) (1) at issue in the present case means that requests for records under the act are to be determined by reference to the provisions of the act, irrespective of whether they are or otherwise would be disclosable under the rules of state discovery; see footnote 7 of this opinion; whether civil or criminal.[10] We also conclude that questions of discovery under the Federal Rules of Civil Procedure are not what is meant by the phrase "otherwise provided by any federal law" as used in § 1-210 (a). We therefore affirm the judgment of the Appellate Court.

I

We first consider the claim of the plaintiff that the documents in question were exempt from disclosure under the act because, under § 1-213 (b) (1), to order their disclosure would "limit" the plaintiff's rights as a litigant "under the laws of discovery . . . ." We disagree.

This claim presents a question of statutory interpretation. "Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles

---

[10] In this connection, we do not endorse the reasoning of the Appellate Court that focused on the meaning of "limit" as opposed to "affect," as we indicate in part I of this opinion.

governing the same general subject matter." (Internal quotation marks omitted.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

This question of statutory interpretation also must be resolved in light of certain general principles governing the act. First, we have often recognized "the longstanding legislative policy of the [act] favoring the open conduct of government and free public access to government records. . . . [*Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 712, 663 A.2d 349 (1995)]; see *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 166, 635 A.2d 783 (1993); *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 450, 545 A.2d 1064 (1988); *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 328, 435 A.2d 353 (1980). We consistently have held that this policy requires us to construe the provisions of the [act] to favor disclosure and to read narrowly that act's exceptions to disclosure. See, e.g., *Gifford* v. *Freedom of Information Commission*, [supra, 227 Conn. 651]; *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 626, 609 A.2d 998 (1992)." (Internal quotation marks omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 240 Conn. 835, 840, 694 A.2d 1241 (1997). Second, whether records are disclosable under the act does not depend in any way on the status or motive of the applicant for disclosure, because the act vindicates the public's right to know, rather than the rights of any individual. See *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 233, 602 A.2d 1019 (1992).

With these principles in mind, we begin with the language in question: "(b) Nothing in the Freedom of Information Act shall be deemed in any manner to: (1) . . . limit the rights of litigants, including parties to

administrative proceedings, under the laws of discovery of this state . . . ." General Statutes § 1-213 (b) (1). The last three words—"of this state"—themselves render the particular discovery dispute involved in this case inapplicable to § 1-213 (b) (1). A discovery procedure in the federal court, under the Federal Rules of Civil Procedure, cannot be considered as coming within the language, "under the laws of discovery *of this state* . . . ." (Emphasis added.) General Statutes § 1-213 (b) (1). We do not rest our decision on that narrow ground, however, because § 1-213 (b) (1) is entirely neutral with reference to state discovery proceedings as well.

The language of § 1-213 (b) (1), read in its entirety, strongly suggests that it is intended to exempt entirely from the operation of the act questions of discovery that may arise in the course of litigation, whether in court or in administrative proceedings. In other words, the most plausible interpretation of the language of subsection (b) (1) is that questions of whether records are disclosable under the act are separate from questions of whether the same records are or would be discoverable in litigation. The language specifically provides that "[n]othing in the [act] shall be deemed in any manner to: (1) Affect the status of judicial records as they existed prior to October 1, 1975, nor to limit the [state discovery] rights of litigants . . . ." General Statutes § 1-213 (b) (1).

The emphatic sense of "[n]othing" and "in any manner," and the linkage between the judicial records prior to October 1, 1975, and the discovery rights of litigants—both being treated in the same subsection and in essentially the same manner—strongly indicate an intention to make the act simply inapplicable to such records and rights. The most plausible way to effect such an intention is to read the language as meaning that the two issues—disclosability under the act, and rights under discovery laws—are separate and indepen-

dent of each other. Indeed, reading the statutory language as the plaintiff would have us do would mean that, although the statute *explicitly* provides that nothing in the act shall be deemed to limit the rights of litigants under the laws of discovery, nonetheless the rights of litigants under the laws of discovery *implicitly* limit the rights of the public under the act. We decline to infer from statutory language an implicit meaning that would undermine the statute's explicitly barred meaning.

The legislative history of the language, scant as it is, is consistent with this interpretation. This provision was part of the original act, enacted in 1975, which provided that nothing in the act would "be deemed in any manner to *affect* the status of judicial records as they existed prior to October 1, 1975, nor to *affect* the rights of litigants, including the parties to administrative proceedings, under the laws of discovery of this state." (Emphasis added.) General Statutes (Rev. to 1977) § 1-19b (3). Here, the linkage between the judicial records exemption and the rights of litigants under discovery laws was even more clear than it currently is, because both exemptions were introduced by the general term "affect," and the clear import of the exemption from the act of judicial records prior to October 1, 1975, was linguistically shared by the exemption of the "rights of litigants . . . under the laws of discovery of this state." General Statutes (Rev. to 1977) § 1-19b (3).

Furthermore, the only reference in the legislative debate to the provision in question was in a colloquy between Representatives Paul C. Manchester and Martin B. Burke, the sponsor of the legislation. Representative Manchester asked: "Is it the intention of this Bill to make available to the public, appraisals rendered in tax appeal cases?" Representative Burke responded: "I think that's covered in the area of records pertaining to pending claims or litigation *and further covered by*

*the* [*laws of discovery*][11] of production lawsuits."
(Emphasis added.) 18 H.R. Proc., Pt. 8, 1975 Sess., p.
3950. We do not read this brief exchange as inconsistent
with our conclusion that § 1-213 (b) (1) renders the
provisions of the act and questions of state discovery
independent of each other.[12] In accordance with Prac-
tice Book §·13-4 (4),[13] and its predecessors, and as a

[11] The printed record of this debate records these words as "loss of disclo-
sure," but we infer that this is a mistranscription from the taped record.
See 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3950.

[12] To the extent that Representative Burke's response concerned § 1-210
(b) (4), which exempts from disclosure "[r]ecords pertaining to strategy
and negotiations with respect to pending claims or pending litigation to
which the public agency is a party until such litigation or claim has been
finally adjudicated or otherwise settled," it is not relevant to this case.

[13] Practice Book § 13-4 (4) provides: "In addition to and notwithstanding
the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff
expecting to call an expert witness at trial shall disclose the name of that
expert, the subject matter on which the expert is expected to testify, the
substance of the facts and opinions to which the expert is expected to
testify, and a summary of the grounds for each opinion, to all other parties
within a reasonable time prior to trial. Each defendant shall disclose the
names of his or her experts in like manner within a reasonable time from
the date the plaintiff discloses experts, or, if the plaintiff fails to disclose
experts, within a reasonable time prior to trial. If disclosure of the name
of any expert expected to testify at trial is not made in accordance with
this subsection, or if an expert witness who is expected to testify is retained
or specially employed after a reasonable time prior to trial, such expert
shall not testify if, upon motion to preclude such testimony, the judicial
authority determines that the late disclosure (A) will cause undue prejudice
to the moving party; or (B) will cause undue interference with the orderly
progress of trial in the case; or (C) involved bad faith delay of disclosure
by the disclosing party. Once the substance of any opinion or opinions of
an expert witness who is expected to testify at trial becomes available to
the party expecting to call that expert witness, disclosure of expert witness
information shall be made in a timely fashion in response to interrogatory
requests pursuant to subdivision (1) (A) of this rule, and shall be supple-
mented as required pursuant to Section 13-15. Any expert witness disclosed
pursuant to this rule within six months of the trial date shall be made
available for the taking of that expert's deposition within thirty days of the
date of such disclosure. In response to any such expert disclosure, any
other party may disclose the same categories of information with respect
to expert witnesses previously disclosed or a new expert on the same
categories of information who are expected to testify at trial on the subject

matter of long-standing practice, the reports of appraisers in tax appeals are routinely discoverable by each party. Thus, we read this colloquy as indicating no more than that the rules of discovery would govern any such document.

In 1993, this court considered, in *Gifford* v. *Freedom of Information Commission,* supra, 227 Conn. 642, "whether a municipal police department arrest report must be disclosed by the police department to the public, pursuant to the [act]; General Statutes [Rev. to 1993] §§ 1-7 through 1-21k; while the criminal prosecution that is related to the arrest report is pending." We first assumed, without deciding, that such a report was "not a record of the [criminal justice] division pursuant to General Statutes [Rev. to 1993] §§ 1-18a and 1-19." *Gifford* v. *Freedom of Information Commission,* supra, 653 n.13. We concluded that, pursuant to the then current version of the act, such an arrest report was disclosable under the act, but only to the extent of the name and address of the person arrested, the date, time and place of the arrest, and the offense for which the person was arrested. Id., 654–62. In doing so, we specified that the issue specifically was governed by General Statutes (Rev. to 1993) § 1-20b.[14]

for that party. Any such expert or experts shall similarly be made available for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

[11] General Statutes (Rev. to 1993) § 1-20b provided: "Notwithstanding any provision of the general statutes to the contrary, any record of the arrest of any person, other than a juvenile, except a record erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19. For purposes of this section, 'record of arrest' means the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested."

Section 1-20b was amended and has been transferred to General Statutes § 1-215, which provides: "Record of an arrest as public record. Exception. (a) Notwithstanding any provision of the general statutes to the contrary, and except as otherwise provided in this section, any record of the arrest of any person, other than a juvenile, except a record erased pursuant to

We then added, however, in dictum, which we now regard as ill-advised, that "our conclusion is supported by reference to [General Statutes (Rev. to 1993)] § 1-19b (b)"; *Gifford* v. *Freedom of Information Commission*, supra, 227 Conn. 662; the provision specifically at issue in the present case. We stated: "Public access to arrest reports while the prosecution is pending would affect the rights of litigants under the laws of discovery" because the criminal defendant would have immediate access under the act to documents otherwise unavailable under our discovery rules, and the state's attorney's rights would be adversely affected by being required to disclose to the defendant documents upon which he might be relying to make strategic decisions. Id., 663–65. In light of those considerations, we declined to read General Statutes (Rev. to 1993) § 1-20b more broadly than its terms plainly specified. Id., 665–66.

In 1994, the legislature, by virtue of Public Acts 1994, No. 94-246, § 15 (P.A. 94-246), amended the statute involved in the present case by substituting "limit" for "affect" in the clause dealing with discovery rights.[15]

chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-212 and subsection (a) of section 1-210, except that disclosure of data or information other than that set forth in subdivision (1) of subsection (b) of this section shall be subject to the provisions of subdivision (3) of subsection (b) of section 1-210. Any personal possessions or effects found on a person at the time of such person's arrest shall not be disclosed unless such possessions or effects are relevant to the crime for which such person was arrested.

"(b) For the purposes of this section, 'record of the arrest' means (1) the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, and (2) at least one of the following, designated by the law enforcement agency: The arrest report, incident report, news release or other similar report of the arrest of a person."

[15] Public Act 94-246, § 15, provides: "Subsection (b) of section 1-19b of the general statutes is repealed and the following is substituted in lieu thereof:

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be deemed in any manner to (1) affect the status of judicial records as they existed prior to October 1, 1975, nor to [affect] LIMIT the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state or (2) require disclosure of any

Public Act 94-246 was a lengthy enactment entitled "An Act Concerning a DNA Data Bank, the Registration of Sexual Offenders and the Disclosure of Arrest Record Information." As its title indicates, most of it concerned the creation of a deoxyribonucleic acid (DNA) data bank from blood samples of persons convicted of certain crimes; P.A. 94-246, §§ 1 through 7; a system of registration of the identities of persons convicted of certain sexual offenses; P.A. 94-246, §§ 8 through 12; an amendment of General Statutes (Rev. to 1993) § 1-20b regarding the scope of disclosure of arrest records; P.A. 94-246, § 13;[16] and an amendment of General Statutes (Rev. to 1993) § 1-19 (b) (3) regarding the scope of disclosure of the identity and signed statements of witnesses. P.A. 94-246, § 14. Only § 15 of the P.A. 94-246 concerned the provision at issue in this case.

The legislative history for P.A. 94-246 is bereft of any discussion of § 15.[17] There was no discussion of the

record of a personnel search committee which, because of name or other identifying information, would reveal the identity of an executive level employment candidate without the consent of such candidate."

[16] Public Act 94-246, § 13, provides: "Section 1-20b of the general statutes if repealed and the following is substituted in lieu thereof:

"(a) Notwithstanding any provision of the general statutes to the contrary, any record of the arrest of any person, other than a juvenile, except a record erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19, EXCEPT THAT DISCLOSURE OF DATA OR INFORMATION OTHER THAN THAT SET FORTH IN SUBDIVISION (1) OF SUBSECTION (b) OF THIS SECTION SHALL BE SUBJECT TO THE PROVISIONS OF SUBDIVISION (3) OF SUBSECTION (b) OF SECTION 1-19, AS AMENDED BY SECTION 14 OF THIS ACT.

"(b) For the purposes of this section, 'record of the arrest' means (1) the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, AND (2) AT LEAST ONE OF THE FOLLOWING, DESIGNATED BY THE LAW ENFORCEMENT AGENCY: THE ARREST REPORT, INCIDENT REPORT, NEWS RELEASE OR OTHER SIMILAR REPORT OF THE ARREST OF A PERSON."

[17] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1994 Sess., pp. 1234–40, 1261–62, 1377, 1379, 1380, 1382, 1428; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1994 Sess., pp. 1573–76; 37 H.R. Proc., Pt. 7, 1994 Sess., p. 2263; 37 H.R. Proc., Pt. 9, 1994 Sess., pp. 3278–81; 37

dictum in *Gifford* regarding the scope of the discovery exemption, or of the effect of changing "affect" to "limit." The only legislative discussion of our decision in *Gifford* focused on that part of its ruling defining the meaning of arrest records under then § 1-20b. See, e.g., 37 H.R. Proc., Pt. 20, 1994 Sess., p. 7388, remarks of Representative Dale W. Radcliffe;[18] id., pp. 7391–92, remarks of Representative Radcliffe;[19] 37 S. Proc., Pt. 6, 1994 Sess., p. 1936, remarks of Senator George C. Jepsen;[20] id., p. 1961, remarks of Senator William A. DiBella;[21] id., p. 1966,

H.R. Proc., Pt. 20, 1994 Sess., pp. 7371–7402; 37 H.R. Proc., Pt. 21, 1994 Sess., pp. 7544–48; 37 S. Proc., Pt. 6, 1994 Sess., pp. 1935–39, 1960–86; 37 S. Proc., Pt. 9, 1994 Sess., pp. 3026, 3067, 3069–70.

[18] Representative Radcliffe stated during the legislative debate in the House of Representatives: "Under current law, under existing law, under the *Gifford* case that we discussed the other day in some detail, the police are under an obligation to give certain information at the time of an arrest. They must give the name and the address of the person arrested, the date, time and place of the arrest and must state the offense with which the person is charged.

"That information, which is required by the Freedom of Information Act is a floor. It is not a ceiling. If the Police Department chooses to give information over and above that information which they are required to give, which is fairly extensive, name, location of the incident, arrest, charge, time of the incident, if they wish to give additional information, they can. There is nothing prohibiting that. This is simply a floor. . . ." 37 H.R. Proc., supra, p. 7388.

[19] During the legislative debate in the House of Representatives, Representative Radcliffe stated: "The *Gifford* case strikes the appropriate balance. This amendment tips the scale too far in favor of disclosure of information that could affect, not in all cases it will, but could affect police investigations and compromise our local and state police departments. I therefore urge rejection. Thank you." 37 H.R. Proc., supra, pp. 7391–92.

[20] Senator Jepsen stated during the legislative debate in the Senate: "This bill very simply restores—well, it overturns the so-called *Gifford* Case in which arrest records—the full content of the arrest records of any individual in any event is left to the discretion of the local police and makes arrest records subject to [Freedom of Information] as existed prior to the *Gifford* Case. If inadequate steps have been taken to meet the objection that witnesses—the identi[t]y of witnesses who would be endangered by this process would be—that their identity would be divulged by allowing the limitation by police to limit disclosure of relevant witnesses." 37 S. Proc., supra, p. 1936.

[21] Senator DiBella stated during the legislative debate in the Senate: "What this amendment does is allows for the—it allows that under the Freedom of Information laws, to allow police reports to be disseminated freely to

remarks of Senator Jepsen;[22] id., pp. 1968–69, remarks of Senator DiBella;[23] id., p. 1969, remarks of Senator John A. Kissel.[24] Thus, whatever the intent or meaning of the

the press. I am not opposed to the issue [of] dissemination of these— information to the press, but under the circumstances that prevail or the prevailing circumstances of an arrest, under existing law, under the state Supreme Court ruling in I believe it was *Gifford* versus—*Gifford* versus [*Freedom of Information*], the Supreme Court ruled that the police department could make a decision as to release of information and the information would be restricted to name, date, time, and address and nature of the crime or the crime that was committed." 37 S. Proc., supra, p. 1961.

[22] During the legislative debate in the Senate, Senator Jepsen stated: "I think it is important to note that the Supreme Court didn't say, offered no opinion about restricting information. They merely said under current law it is not required that it be disclosed.

"We did just fine for years up until the *Gifford* Case with the free disclosure of such information. The [Freedom of Information] laws didn't just happen. They happened because of the perceived need to open up information . . . ." 37 S. Proc., supra, p. 1966.

[23] Senator DiBella stated during the legislative debate in the Senate: "I have listened to many debates in this room. I find it hard to tie the issue of discrimination and the question that's before us today. Point, it is assumed that the law prior was that these records had to be released. Fact, it has been the fact that the present law has been the law for many years. If you read the *Gifford* versus the *Freedom of Information*, it's a clarification that says that the police departments are allowed to continue to proceed as most of them had in the past and that was restricting this kind of information.

"So when you read *Gifford*, it wasn't a question that *Gifford* restricted the [Freedom of Information]. The question was challenged and they sustained the present and existing operation in *Gifford*. The question is a very critical issue as to the question of being able to protect the rights of people in an investigation and the issue that the amendment within the bill allows that, it would allow an immediate decision when this—when the report was being drawn up, not giving the police department the ability to evaluate extensively the effects and ramifications of releasing such information in the course of that case.

"So the information, the critical issue here is the Supreme Court decision sustained the existing practice. It passed the test in the Supreme Court. The Supreme Court looked at the issue of the rights of the individuals and balanced that against the rights of those people that would be protected in the course of an investigation or in the course of protecting that information from public dissemination." 37 S. Proc., supra, pp. 1968–69.

[24] Senator Kissel stated during the legislative debate in the Senate: "Yes, I rise in support of the amendment. With all due respect to Senator DiBella, I believe that the statements made by Senator Jepsen are true. I will grant you that perhaps in the *Gifford* Case, the state Supreme Court clarified the

change from "affect" to "limit," we can find nothing in either the language or legislative history of P.A. 94-246 to indicate that § 1-213 (b) (1) means anything different now from what it meant when it originally was enacted, namely, that the provisions of the act do not affect or limit discovery rights, and discovery rights do not affect or limit the provisions of the act. The two operate separately and independently.[25]

Finally, the procedures in this case supply a scenario that suggests an additional reason that § 1-213 (b) (1) has the meaning that we have ascribed to it. In this case, the discovery dispute over the documents at issue was never resolved by the federal court. Therefore, despite the plaintiff's assertion that the documents in question were not discoverable in the federal action, we cannot know whether an order of disclosure under the act *would* have limited the right that the plaintiff asserted under the federal discovery rules to withhold the documents.

Therefore, in the absence of a definitive prior discovery ruling regarding documents involved in both a judicial discovery dispute and a request under the act, the defendant, or a court reviewing the defendant's action, in attempting to apply the discovery exemption, would be required to determine whether the documents sought under the act would be subject to discovery under the applicable procedural court rules. Many discovery questions, however, are highly discretionary in nature. It would be very difficult, if not impossible, for the defen-

underlying issue and that perhaps what had been taken for a right was not such and that it was taken for granted, but even if that's the case, our issue before us is do we let the sun shine in or don't we. . . ." 37 S. Proc., supra, p. 1969.

[25] This does not mean, however, that other specific exemptions from the act might not operate to shield certain documents from disclosure that also are or might be involved in discovery disputes. See, e.g., General Statutes § 1-210 (b) (3) (records of law enforcement agencies) and (4) (pending claims or pending litigation).

dant or a court to determine accurately how that discretion would be exercised. It is unlikely that in enacting § 1-213 (b) (1), the legislature intended to place such a difficult and conjectural burden on the defendant or a court. The more plausible interpretation is that each determination—disclosure under the act, and disclosure under discovery rules—is made solely by the body charged with that responsibility: the defendant or the court applying the act; and the court applying its discovery rules.

The plaintiff argues that requiring disclosure of the documents in question "limits the rights of litigants because it forces public agencies to litigate in an [unlevel] playing field, particularly with respect to discovery matters. The decision appealed herein gives a private party litigating against a public agency the advantage of obtaining much more information in preparation for litigation than its opponents." We do not deny that, except to the extent that other provisions of the act exempt documents from disclosure, the practical effect of our interpretation is that a member of the public might be able to secure under the act documents from an agency that he is suing or intends to sue that he might not be able to secure through discovery in the litigation. The reason for that, however, is rooted in the fundamental purposes of the act, which presumptively make public documents available to the public, and in the notion that the act and judicial discovery rules are designed with different aims and limitations in mind. Although in many cases the two routes for disclosure might overlap, in some cases they might arrive at different destinations. The fact that a member of the public might also be an adversary of the agency, however, does not by itself strip him of his rights under the act. Moreover, there may also be instances in which a litigant would be able to secure documents through discovery that are exempt from disclosure under the act. The

reason for that is, likewise, rooted in the fact that the act and discovery rules have different purposes and limits.

The plaintiff also relies on our statement in *Gifford* v. *Freedom of Information Commission*, supra, 227 Conn. 665–66, that the discovery exemption is intended to avoid transforming "the commission, an executive agency, into the overseer of . . . discovery rules." As we previously have indicated, that statement, and the discussion of § 1-213 (b) (1) of which it was a part, were dictum. Our holding was that the specific statutory language of General Statutes (Rev. to 1993) § 1-20b controlled the disposition of that case. Moreover, as we also previously have indicated, that dictum was ill-advised. Construing the language to mean that the two questions—disclosability under the act, and discovery under litigation rules—are independent of each other does not, as we suggested in *Gifford*, make the defendant an overseer of discovery rules. It simply divides into separate spheres those questions that most appropriately are decided in those spheres. Furthermore, our dictum ignored the most plausible interpretation of the language at issue in the present case, and it ignored the concomitant result that, by making disclosure under the act dependent on an actual or hypothetical discovery ruling, it transformed a court dealing with separate litigation into an overseer of the provisions of the act. We do not think that § 1-213 (b) (1) contemplates such a result.

## II

The plaintiff also claims that the act is inapplicable to the documents at issue in this case because § 1-210 (a) makes public records available "[e]*xcept as otherwise provided by any federal law* . . . ." (Emphasis added.) See footnote 4 of this opinion for the text of § 1-210 (a). The plaintiff contends that the documents "in question in the present case [are] 'otherwise pro-

vided by [any] federal law' because the Federal Rules of Civil Procedure already provide a legal process for [their] disclosure . . . ." We disagree. We conclude that the language in question does not include questions of discovery under the Federal Rules of Civil Procedure.

First, the phrase at issue in § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute . . . ." State discovery rules are governed generally by rules of the court, not by statutes. Thus, linking a total federal exemption from the disclosure provisions of the act with a parallel reference to state statutes strongly suggests that the reference to "federal law" was not intended to encompass federal litigation engendered issues of discovery. It suggests, instead, a reference to federal and state laws that, by their terms, provide for confidentiality of records or some other similar shield from public disclosure.

Indeed, the only references in the entire legislative history of the act to the language in question are consistent with the suggestion that it was intended to refer to other federal and state laws that by their terms shield specific information from disclosure.[26] There is nothing

[26] On the floor of the House of Representatives, Representative Burke stated: "In line 164, there is the word 'TAX RETURNS' inserted in one of the exemptions for public records and it would read 'records, tax returns, reports and statements exempted by federal law or state statute.' Now the reason for this, the Tax Department called it to the Committee's attention . . . that under federal law, tax returns are to be confidential and did we not specifically exempt tax returns, we would probably have some problems so we did so, although, in my own personal opinion, *that was the intention of the Committee all along when we said records, reports and statements exempted by federal law. . . .*" (Emphasis added.) 18 H.R. Proc., supra, p. 3897.

Thereafter, the following exchange occurred between Representatives Burke and Albert R. Webber:

"[Representative Webber]: Through you Mr. Speaker, a question to the gentleman from the 56th. In line with the questioning developed by [Representative Gerald F.] Stevens, could one get information from a parole board? I speak particularly of the applicant for parole. Could he receive, under the terms of this Amendment, or the Bill, the detailed information as to his status and why from a board of pardons or parole board?

therein, therefore, that suggests that the legislature intended this very general language to encompass the kinds of individualized and possibly hypothetical determinations under federal discovery rules that the plaintiff's argument would suggest. Indeed, there is no reference at all to federal discovery rules.

Third, we already have determined that § 1-213 (b) (1), which specifically refers to "the laws of discovery of this state," does no more than make state discovery questions irrelevant to the question of disclosure under the act. It would be incongruous for a specific reference to *state* discovery rules to have that meaning, but a general reference to "any federal laws" to mean that the applicability of the act depends on questions of discovery under the Federal Rules of Civil Procedure.

The judgment is affirmed.

In this opinion the other justices concurred.

"[Representative Burke]: Through you Mr. Speaker, there is a general exclusion in the Bill itself concerning records, reports and statements exempted by state statutes. There is a further exclusion concerning records of law enforcement agencies. It would be possibly, I guess on my part, but I would say that, because I don't know what the parole statutes say, we certainly didn't peruse every section of the General Statutes in dealing with this Bill. But if they are privileged and exempt from inspection, as they now exist, then they would continue to be so under the blanket exclusion, if you will, on lines 164 and 165 of the file copy." 18 H.R. Proc., supra, pp. 3904–3905.