# MISTY WILLIAMS *v.* FREEDOM OF INFORMATION COMMISSION
## (AC 28254)

DiPentima, Robinson and Borden, Js.

Argued February 21—officially released June 17, 2008

*Misty Williams*, pro se, the appellant-appellee (plaintiff).

*Dawn Massey*, pro se, the appellee-appellant (intervening plaintiff).

*Tracie C. Brown*, principal attorney, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiff, Misty Williams,[1] appeals from the judgment of the trial court dismissing her

---

[1] The plaintiff is joined in this appeal by the intervening plaintiff, Dawn Massey. Massey also filed and briefed a cross appeal, in which she raised and argued the same claims as the plaintiff. Our decision on the plaintiff's appeal disposes of the intervening plaintiff's cross appeal as well.

administrative appeal from the decision of the defendant, the freedom of information commission (commission). The commission dismissed her complaints regarding records that she had requested from the town of Branford, pursuant to the freedom of information act (act), General Statutes § 1-200 et seq. The plaintiff claims that the court improperly (1) reviewed the commission's determination of legal issues pursuant to the substantial evidence standard and (2) interpreted the meaning of the terms "certifying" and "page," as used in the act.[2] Although we agree that the court employed an improper standard of review to evaluate the commission's legal conclusions regarding the meaning of these statutory terms, we nonetheless affirm the judgment of the trial court.

The plaintiff appealed to the trial court from eight final decisions of the commission. The court dismissed the appeal, and this appeal followed.

The relevant procedural and factual history is as follows. The plaintiff, on behalf of the intervening plaintiff, Dawn Massey, requested various town documents from the town of Branford. Dissatisfied with the number and quality of the documents that she received from the town, the plaintiff filed eight letters of complaint with the commission, each of which contained multiple complaints. These letters were filed between September 9 and November 9, 2004. Many of the complaints alleged that certain documents were improperly certified, pursuant to General Statutes § 1-212,[3] for various reasons.

---

[2] Additionally, the plaintiff raises a third claim, in which she asserts that the court did not adequately review the evidence in the record before determining the statutory meaning of "certifying" and "page." At oral argument in this court, the plaintiff clarified that this claim was raised in the alternative to her first claim, i.e., that we needed to reach this claim only if we concluded that the court had employed a proper scope of review to the meaning of those terms. In light of our resolution of the plaintiff's first claim, therefore, we do not reach this third claim.

[3] General Statutes § 1-212 provides in relevant part: "(a) Any person applying in writing shall receive, promptly upon request, a plain or certified

In her letter dated September 29, 2004, the plaintiff asserted that she was overcharged, also pursuant to § 1-212, for the copies of the town records that she had received. Among the arguments the plaintiff asserted was that § 1-212 allows the town to charge at most fifty cents for each sheet of paper of copied records it provides, regardless of whether information is copied on one or both sides of the sheet of paper. In other words, the plaintiff asserted that the term "page," as used in the statute, refers to both sides of a sheet of paper. The commission grouped the eight letters of complaint and accorded them three separate hearings. The commission produced eight final decisions, disposing of each of the plaintiff's letters individually. The commission addressed the plaintiff's September 29, 2004 letter, regarding charges for copies of records, in *Williams* v. *Clyne*, FIC 2004-445 (September 14, 2005). In its final decision, the commission determined that the term "page," as used in the statute, means one side of a piece of paper. Thus, the commission concluded that the town did not violate the act in this regard. The commission also addressed all of the plaintiff's various complaints, asserted in four of the eight letters, regarding the proper certification of documents in the same final decision. The commission concluded that "[t]he word 'certifying' is not defined in the . . . [a]ct, and the requirements for 'certifying any copy' or 'certifying to any fact' are not contained in the . . . [a]ct. . . . It is concluded that § 1-212 (e) . . . only establishes a fee for certifying any copy of a public record, or certifying to any fact appearing in a public record, and does

---

copy of any public record. The fee for any copy provided in accordance with the . . . [a]ct . . . (2) [b]y all other public agencies . . . shall not exceed fifty cents per page. . . .

"(e) Except as otherwise provided by law, the fee for any person who has the custody of any public records or files for certifying any copy of such records or files, or certifying to any fact appearing therefrom, shall be for the first page of such certificate, or copy and certificate, one dollar; and for each additional page, fifty cents. . . ."

not set forth requirements for the form or content of such certifications."

The plaintiff appealed to the trial court from each of the commission's eight final decisions. The plaintiff claimed, among other things, that the commission, in its final decisions, improperly determined that the term "certifying" had no statutory meaning and misinterpreted the term "page" to mean one side of a sheet of paper. The court, apparently viewing the questions of the meaning of "certifying" and "page," as used in the act, as factual questions, concluded that the commission's determinations in those regards were supported by substantial evidence. Accordingly, the court dismissed the plaintiff's appeal.

I

We first address the plaintiff's claim that the court employed an improper standard of review when evaluating the commission's conclusions concerning the meaning of the statutory terms "certifying" and "page." The plaintiff argues that the issue of the statutory meanings of those terms are questions of statutory interpretation and, therefore, should have been accorded plenary review. We agree.

We first note that our reading of the court's memorandum of decision leads us to conclude that, as the plaintiff contends, it considered the meaning of the statutory terms "certifying" and "page" to be factual questions subject to a deferential scope of review, namely, whether they were supported by substantial evidence in the record. Indeed, the commission does not suggest otherwise; in fact, it contends that because the terms are ambiguous, they present questions of fact and, therefore, must be sustained as supported by substantial evidence.[4]

[4] In this regard, the commission has conflated the judicial determination of the meaning of contract language with the judicial determination of the meaning of statutory language. It is true, of course, that the meaning of

Although the court applied an improper standard of review to these two issues, we nonetheless address them on their merits. The parties have had full opportunity to brief them, they present questions of law without the need for further fact-finding, and the court's ultimate conclusions were correct. Thus, we affirm the trial court's judgment for reasons other than those on which it relied. See *State* v. *Vines*, 71 Conn. App. 359, 367, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002).

We next consider whether the commission's determinations of the meaning of these two statutory terms should be afforded any deference. We conclude that they should not.

Our Supreme Court has recently clarified the question of "the proper standard to apply in determining when agency deference is appropriate . . . . As we frequently have stated, [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 642, 708 A.2d 202 (1998); [see also] *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001). We have determined, therefore, that the traditional deference accorded to an agency's interpretation

ambiguous contract language presents a question of fact for the trier. *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 140–41, 838 A.2d 1026 (2004). It is equally true, however, that the meaning of statutory language, whether ambiguous or not, presents a question of law for the court. See *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–64, 931 A.2d 890 (2007).

of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390, 709 A.2d 1116 (1998); accord *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 121, 742 A.2d 1257 (2000) (government agency's reasonable, time-tested interpretation should be accorded great weight by the courts); *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988) (deference to . . . time-tested agency interpretation of a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable). Consequently, an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable. Cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, supra, 390 n.18 (finding no deference warranted to agency interpretation when agency had failed to make public declaration of interpretation and had applied interpretation for only four years). . . . *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 261–63, 788 A.2d 60 (2002)." (Internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–64, 931 A.2d 890 (2007).[5]

---

[5] Although the court in *Longley* did not refer to *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 376, 627 A.2d 1296 (1993), in which our Supreme Court had suggested that a court, "faced with two equally plausible interpretations of the statutory language" governing an administrative agency's power, should give deference to the agency's interpretation, we regard this principle of deference as implicitly overruled by the more comprehensive and nuanced standard articulated in *Longley*.

In the present case, the meaning of the terms "certifying" and "page," as used in the act, present questions of statutory interpretation for the court. Furthermore, no deference is due the agency's determination of their meanings. Although, as both the plaintiff and the commission agree, both those terms may be regarded as ambiguous, those determinations by the commission have not been subjected to judicial scrutiny and have not been time tested by the agency consistently over a long period of time.[6]

We therefore proceed to the familiar judicial task of statutory interpretation of the terms, in a plenary fashion. See *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 844–45, 930 A.2d 653 (2007). This process involves the determination of the meaning of the statutory language as applied to the facts of the case, which also involves the question of whether the language so applies. *Genesky* v. *East Lyme*, 275 Conn. 246, 277, 881 A.2d 114 (2005) (*Borden, J.*, concurring).

II

We next address the meaning of the term "certifying" as used in the act. The plaintiff contends that properly certified copies under the act must have the following

---

[6] In this regard, we reject the plaintiff's contention that both the commission and the court were required to give deference to a certain prior advisory opinion issued by the commission, in which the commission opined: "[T]he certification required by [General Statutes] § 1-15 [now § 1-212] must state, at a minimum, that the certified copy is a true copy of a public record maintained or kept on file by the public agency, whether that record is an original or a copy. If the public record is itself a copy, the certification must clearly state that the certified copy is a true copy of a copy of a document maintained or kept on file by the public agency. The certification must make clear that the copy is not a copy of an original document. . . . On the other hand, if a document requested to be certified is a copy of an original, the certification must clearly state that fact." Opinions, Conn. Freedom of Information Commission No. 76 (July 12, 1989).

There is no evidence in this record that this opinion has ever been publicly articulated or that it has been consistently applied over a long period of time.

characteristics: the certification must attest that it is a true and complete copy of the record on file; the certification must be issued by the person who maintains the record or his or her authorized representative; the certifier must sign the record; the raised seal of the certifier must appear on each page of the record; and the "certification shall be truthful." We disagree that the act mandates such a comprehensive set of requirements.

The present case does not require us to arrive at a global meaning of the term "certifying." Rather, this case requires us to determine only whether, under the facts of this case, the town met its statutory obligation of providing certified copies of the relevant documents to the plaintiff. We conclude that the town did.

The following facts are relevant to this question. As noted previously, the plaintiff filed eight letters of complaint with the commission between September and November, 2004. Of those eight letters, four included complaints about the adequacy of the way in which the records the plaintiff received from the town were certified. The commission, as part of its final decision in *Williams* v. *Clyne*, supra, FIC 2004-445, summarized the plaintiff's complaints regarding certification as follows: "The [plaintiff and the intervening plaintiff] also maintain that the certifications by the [town] of the records they received were improper. The [plaintiff and the intervening plaintiff] assert that the certifications were improper because the [town] did not affix a raised seal on the copies, because the certifications are sometimes attached to the copies, rather than written directly on the copies, because the certifications did not state how many pages were contained in the copy or number the pages of the copies, and because the certifications did not describe, or did not accurately describe, the records certified beyond stating that they were true copies of the originals." The commission concluded

that § 1-212 "only establishes a fee for certifying any copy of a public record, or certifying to any fact appearing in a public record, and does not set forth requirements for the form or content of such certifications." After examining all of the documents supplied by the town to the plaintiff and the intervenor, the commission also made the factual determination that "the [town] certified that the copies provided to the [plaintiff and the intervening plaintiff] were true copies of the originals."

We begin with the language of the statute. The act itself contains no specific definition of the term "certifying" as used therein. Unlike some other statutes; see, e.g., General Statutes §§ 7-23 (certification by town clerk) and 7-36 (certification by registrar of vital statistics);[7] which we will discuss, the act does not prescribe any particular form or content of a certification of records. Nonetheless, the act does refer to "any certified record" in a way that strongly suggests its general meaning as used therein. General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to . . . receive a copy of such records in accordance with section 1-212. . . . *Any*

---

[7] General Statutes § 7-23 provides in relevant part: "No copy of [a] record certified by the town clerk or assistant town clerk of any town shall be deemed valid in law unless the seal of such town is affixed thereto; and the town clerk of each town . . . shall affix the seal of such town to all certified copies of the record . . . ."

General Statutes § 7-36 provides in relevant part: "(5) 'Certified copy' means a copy of a birth, death, fetal death or marriage certificate that (A) includes all information on the certificate except such information that is nondisclosable by law, (B) is issued or transmitted by any registrar of vital statistics, (C) includes an attested signature and the raised seal of an authorized person, and (D) if submitted to the department, includes all information required by the commissioner . . . ."

*certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by the law to so act,* shall be competent evidence in any court of this state of the facts contained therein. . . ." (Emphasis added.) This use of the term "certified" suggests that as long as an official with legal authority to do so attests, or states in writing, that the records are true copies of the originals, he or she has issued a "certified record" properly under the act. Put another way, if such a record would be competent evidence in court under § 1-210, it stands to reason that it would also be considered a "certified" record under § 1-212. Indeed, § 1-210 specifically links such a record to those records to which one would be entitled under § 1-212. Furthermore, this general meaning is consistent with the most apt definition provided by the dictionary for the word "certify": "To confirm formally as true, accurate, or genuine; testify to or vouch for in writing." American Heritage Dictionary of the English Language (New College Ed. 1981). Finally, the purposes of the act, namely, to make public records available to the public, except when specifically exempted; see *Groton Police Dept.* v. *Freedom of Information Commission,* 104 Conn. App. 150, 155, 931 A.2d 989 (2007); and to do so without undue burden on the provider of the records, as we will discuss, are fully consistent with this simple, general meaning of the term "certifying."

Applying this general meaning to the facts of this case, we conclude that the records provided to the plaintiff were properly certified within the meaning of the act. The commission found that "the [town] certified that the copies provided to the [plaintiff and the intervenor] were true copies of the originals." Under the particular facts of this case, this was a sufficient certification for purposes of the act.

The plaintiff agrees with the requirements that the certification attest that the copy is a true copy and that it be signed by the certifier. She maintains, however, that the statute requires also that the attestation include that the copy is a "complete copy"; it be "issued by the person who maintains the record or his/her authorized representative"; the "raised seal" of the certifier be "affixed upon each page" of each document; and that "[t]he certification shall be truthful." The plaintiff draws these additional requirements from §§ 7-23 and 7-36. See footnote 7. These two statutes, however, simply represent two instances in which the legislature has decided that a specific form of certification is necessary due to the nature and importance of the records. We see nothing in the language or purpose of either of those statutes or the act to suggest that the specific requirements of those statutes be imported into the provisions of the act.

## III

The plaintiff's final claim is that the court improperly determined that pursuant to § 1-212 (e),[8] "page" means one side of a piece of paper, and, therefore, the fee charged for a copy of a page refers to the fee that may be charged for the copy of each side of a piece of paper. In other words, the plaintiff claims that she was charged improperly for each side of the numerous pieces of paper, constituting the certified records that the town provided to her, on which information was recorded; she maintains, to the contrary, that she should have been charged for only each piece of paper supplied to her, despite the fact that information was recorded on both sides thereof. According to the plaintiff, "page" as used in § 1-212 (e) means a piece of paper. We reject this claim.

[8] See footnote 3.

We acknowledge that depending on the context in which it is used, the word "page" can mean either one side of a piece of printed matter or the piece of paper on which the material is printed. One may speak of a page of a book, which ordinarily refers to each side of the piece of paper. One may also, however, speak of tearing out a page of a book, which ordinarily refers to the piece of paper that has printed matter on both sides. See, e.g., American Heritage Dictionary of the English Language, supra ("page . . . 1. One side of a leaf of a book, letter, newspaper, manuscript, or the like. Often used of the entire leaf: *tearing out a page.* 2. The writing or printing on one side of a leaf."). (Emphasis in original.) We conclude that the word "page" as used in the act refers to each side of the document copied. First, that is the more natural meaning in the context of copying a page, as the previously mentioned dictionary reference indicates. In this regard, the other meaning, urged by the plaintiff, appears to apply principally in the context of tearing out a page of a document, which is not the context in which the act uses the word. Second, in other statutory provisions, the legislature has used the term "page" to mean one side of a piece of paper. See General Statutes § 42-158n.[9] Compare General Statutes § 4a-67a (a),[10] in which the legislature has specifically referred to "two-sided copies" of pieces of paper for a different purpose.

[9] General Statutes § 42-158n provides in relevant part: "At or before the commencement of any work under a construction contract, the owner shall post and maintain in a conspicuous place at the construction site . . . (2) the volume and page number of the land records of the town in which such property is located . . . ."

[10] General Statutes § 4a-67a (a) provides in relevant part: "The Commissioner of Administrative Services shall prepare on or before October 1, 1989, and thereafter periodically update, a plan to increase state procurement of goods that contain recycled materials and products that are recyclable or remanufactured . . . . In preparing such plan, the commissioner shall assess the feasibility and efficacy of . . . requiring the state to utilize *two-sided copies*, whenever possible, to reduce paper waste." (Emphasis added.)

The plaintiff argues that the public policy behind the act, namely, relatively inexpensive access to government records, compels this court to interpret "page" to mean a sheet of paper. Thus, the plaintiff argues that she and other requestors of public documents are required to pay only fifty cents for certified, two-sided copies of public records. We disagree.

The plaintiff directs the attention of this court to three of the commission's prior advisory opinions. The plaintiff suggests that these opinions demonstrate the state's strong public policy of providing inexpensive copies of public records to the public. The plaintiff cites the commission's advisory opinions, numbers thirty, fifty-five and fifty-nine.[11] The plaintiff refers to dicta in each of these opinions in which the commission indicates that the purpose of the act is to provide the general public easy and relatively inexpensive access to public records. Although we do not have occasion now to review the particular conclusions of any of the commission's advisory opinions, we believe that it is beyond question that the overarching purpose of the

[11] In advisory opinion thirty, the commission was asked to reconcile the fee provisions of General Statutes § 1-15, now §1-212, with General Statutes § 7-34 (a), with regard to certified copies of land records. The commission determined that § 7-34 (a), because it was more specific than the general provisions of §1-15, and because §1-15 explicitly stated that other established law would apply when it contradicted the general provisions of §1-15, the fee provisions of § 7-34 (a) governed. Opinions, Conn. Freedom of Information Commission No. 30 (February 22, 1978).

In advisory opinion fifty-five, the commission determined that with regard to large property maps, when the agency does not have the capability of providing adequate copies of the large maps, it may offer to send the maps out to have them copied and charge the requestor no more than the cost to the agency, pursuant to General Statutes § 51-15. Opinions, Conn. Freedom of Information Commission No. 55 (November 9, 1983).

Finally, in advisory opinion fifty-nine, the commission determined that agencies may not charge fees in excess of the fee provisions of §1-15 to cover the cost of its personnel preparing and copying the requested records. Opinions, Conn. Freedom of Information Commission No. 59 (August 22, 1984).

act is, as the plaintiff asserts, to "facilitate public access to government records by making such records available at a reasonably low cost." See Opinions, Conn. Freedom of Information Commission No. 55 (November 9, 1983); see also *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 387, 746 A.2d 1264 (2000). We do not agree, however, that this resolves the question of statutory interpretation before us.

The goal of public access is not the only concern addressed in the statute. Instead, by shifting some of the financial burden onto the requestor through the fee schedule provisions, the legislature has also manifested a second concern, namely, not to overburden agencies with the expense of complying with the act. Furthermore, to the extent that some requestors may find the cost provided in the fee schedule to be prohibitively expensive, § 1-212 (d) provides that the usual fee may be waived in some instances.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] General Statutes § 1-212 (d) provides: "The public agency shall waive any fee provided for in this section when: (1) The person requesting the records is an indigent individual; (2) The records located are determined by the public agency to be exempt from disclosure under subsection (b) of section 1-210; (3) In its judgment, compliance with the applicant's request benefits the general welfare; or (4) The person requesting the record is an elected official of a political subdivision of the state and the official (A) obtains the record from an agency of the political subdivision in which the official serves, and (B) certifies that the record pertains to the official's duties.