******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ROBERTO ALVES *v.* JANICE GIEGLER ET AL.
## (SC 20907)
## (SC 20908)

Robinson, C. J., and McDonald, D'Auria, Alexander and Dannehy, Js.

*Syllabus*

Pursuant to statute (§ 9-461), "[n]ot later than the seventh day following the date set for the primary for nomination at any election at which a municipal office is to be filled, the clerk of the municipality in which such election is to be held shall file with the Secretary of the State a list of the candidates of each party for the municipal offices to be filled at such election nominated in accordance with the provisions of [the] chapter [of the General Statutes governing nominations to public office and political parties]."

Pursuant further to statute (§ 9-452a), "[n]ot later than five days before a minor party holds a party meeting to nominate a candidate for public office, the presiding officer of such meeting shall give written notice of the date, time, location and purpose of the meeting to, in the case of a municipal office, the town clerk of the municipality served by such office," and, "[c]oncomitantly, the presiding officer of such meeting shall cause the written notice of such meeting to be published in a newspaper with a general circulation in the applicable town for such office."

The plaintiff, who was a candidate for mayor of the city of Danbury in the November, 2023 municipal election, brought this action in the trial court, pursuant to statute (§ 9-328), seeking certain injunctive and declaratory relief in connection with the decision of the named defendant, G, the Danbury town clerk, to submit to the Secretary of the State (secretary), pursuant to § 9-461, one of two competing slates of candidates for various municipal offices, each purporting to be the endorsed slate of the Independent Party of Danbury (Independent Party). The first slate filed with the Danbury town clerk's office consisted of candidates, including the plaintiff, who were supported by the Danbury Democratic Town Committee and who were selected at an endorsement meeting held by the Independent Party on August 11, 2023. Notice of that meeting had been published in a local newspaper seven days in advance, and a copy of the newspaper notice was on file in the Danbury town clerk's office. The second slate filed with the Danbury town clerk's office consisted of candidates who were supported by the Danbury Republican Town Committee and who were selected at an endorsement meeting of the Independent Party held on August 21, 2023. When the defendant R, the chairperson of the Independent Party, filed the second slate of candidates with the Danbury town clerk's office, he included a cover letter, on Independent Party letterhead, explaining that the submission represented the party's "official endorsements" and that, although he was aware of the prior submission of an "unofficial" slate of candidates, the Independent Party's executive board had vetoed that slate and deemed it invalid in accordance with party rules. Although both slates were accepted by G, she ultimately submitted to the secretary, pursuant to § 9-461, only the second slate of candidates, and not the previously filed slate that included the plaintiff. After a trial to the court, the trial court ordered G to remove from the Independent Party line on the November, 2023 ballot those names that she had submitted to the secretary, excluding four candidates for offices that the parties stipulated were unaffected by G's decision. In its memorandum of decision, the court explained that placing either slate of candidates on the Independent Party line would be improper. With respect to the August 21, 2023 slate, the court concluded that that slate did not comply with the statute (§ 9-452) that governs the submission of a minor party's list of nominees for municipal office to a town clerk because it was not "certified," as that statute required. With respect to the August 11, 2023 slate, the court concluded that, although G had exceeded her authority by failing to file that slate with the secretary pursuant to § 9-461, that slate was invalid because

it was the product of a meeting that did not comply with the requirements of § 9-452a, insofar as the presiding officer had not provided the Danbury town clerk with notice of the meeting. Thereafter, the trial court certified certain questions of law to this court for review pursuant to statute (§ 9-325). G and R also filed separate appeals, and the plaintiff filed cross appeals, from the trial court's judgment.

*Held* that the trial court's ultimate determination that neither slate of candidates should be placed on the Independent Party line on the November, 2023 ballot was correct, albeit for reasons different from those stated in its memorandum of decision, and, accordingly, this court affirmed the trial court's judgment:

1. This court clarified the extent to which, under § 9-461, a town clerk has the discretion to accept or reject a minor party's filing of its endorsement of candidates:

   Under § 9-461, which governs the town clerk's responsibilities in filing a party's list of candidates with the secretary, the town clerk has the ministerial obligation to accept and file with the secretary lists of minor party candidates that are facially valid under the terms of § 9-452, and, to be facially valid under § 9-452, the list must be (1) timely filed at least sixty-two days before the election, (2) certified by the presiding officer of the committee, meeting or other authority making such nomination, and (3) in the prescribed format with respect to the certification of the candidates' names, signatures, addresses, and the title and district of the office for which each candidate is nominated.

   Moreover, the town clerk's function is limited to assessing the presence or absence of the facial requirements under § 9-452, and the town clerk has no discretion to consider the validity of the nominations or otherwise to determine whether a minor party has complied with the statutory scheme beyond the facial items.

2. G exceeded her authority under § 9-461 by failing to file with the secretary the slate of candidates approved at the Independent Party's August 11, 2023 meeting, and the trial court, having incorrectly determined that that slate was invalid for failing to comply with the notice requirements of § 9-452a, should have exercised its equitable authority to order G to forward that slate to the secretary:

   The plain and unambiguous language of § 9-452a, and especially the statute's use of the word "concomitantly," requires that the presiding officer of a minor party's nominating meeting give two separate forms of written notice of that meeting, namely, notice to the town clerk and notice published in a suitable newspaper, and those two forms of written notice were an integral part of § 9-452a such that constructive or actual notice could not substitute for the written notice required by that statute.

   Contrary to R and G's argument that the first slate did not comply with the requirements of § 9-452a because no separate notice of the August 11, 2023 meeting was given to the town clerk, this court concluded that a timely filed copy of the newspaper notice was sufficient to satisfy § 9-452a, as there was no claim that the content of that notice itself, which included the date, time, location, and purpose of the August 11, 2023 meeting, substantively would not satisfy § 9-452a if it was separately filed with the town clerk in a timely manner.

   Moreover, the record did not establish as a matter of law that the copy of the newspaper notice was not timely filed with the Danbury town clerk's office, insofar as it lacked a date and time stamp indicating when it was received and the record was otherwise silent as to when it was filed, the trial court did not make a specific finding regarding whether the notice to the town clerk was timely, and, because the issue of whether a filing was timely filed ordinarily is a finding of fact to be made by the trial court in the first instance, and because § 9-325 specifically limits the jurisdiction of this court to questions of law, this court was precluded from considering that factual issue in the first instance on appeal.

3. G properly filed with the secretary, pursuant to § 9-461, the slate of candidates approved at the Independent Party's August 21, 2023 meeting because, contrary to the conclusion of the trial court, R's submission of that slate complied with the certification requirement of § 9-452:

   The term "certify," as used in § 9-452, was not defined by the statutory

scheme, and, upon review of dictionary definitions of that term, this court concluded that its plain meaning was ambiguous as to whether it required a specific attestation of truth, veracity, or correctness, as the plaintiff argued, or whether the cover letter bearing R's signature and purporting to offer the Independent Party's "official endorsements" was sufficient to satisfy the certification requirement, as G and R argued.

In resolving that ambiguity, this court declined to hold that the absence of the word "certification" renders a filing defective as a matter of law for purposes of § 9-452, as that statute does not prescribe any particular manner or form of certification, and reading additional requirements into the statute's language would conflict with both the rule of statutory construction that courts are not permitted to supply statutory language that the legislature may have chosen to omit, as well as the maxim that ambiguities in election laws are to be construed to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and, most important, to allow the voters a choice on election day.

In the present case, R's cover letter, printed on Independent Party letter-head and signed by R in his capacity as chairperson, indicated that the party was filing its "official endorsements," that degree of formality met the dictionary definition of "certify" because the filing involved the presentation of a formal communication and a confirmation that the endorsements met a standard, and, accordingly, R's letter constituted the voucher necessary to comply with the certification requirement under § 9-452, rendering the slate of candidates selected at the August 21, 2023 meeting validly filed.

Accordingly, in light of her ministerial role as town clerk, G was required to accept and transmit to the secretary the Independent Party's two slates of endorsements, from both the August 11 and 21, 2023 meetings, insofar as both were facially compliant with the governing statutes, and, because it was undisputed that the presence of two facially valid slates had the effect of creating an over endorsement by the Independent Party, there was functionally no endorsement with respect to the affected offices by operation of statute (§ 9-414), and the trial court's ultimate determination that neither set of endorsements should have been placed on the ballot was, therefore, correct.

Furthermore, to the extent that the Independent Party was deprived of its first amendment rights to identify the people who constitute the association and to select a standard bearer, its remedy was within its own bylaws and any dispute resolution mechanism provided therein, coupled with judicial enforcement of the party's internal resolution of that dispute, and there was no record establishing how the Independent Party resolved the two competing slates in accordance with its own intraparty dispute resolution procedures, or any request for a court order challenging or enforcing that resolution, such that neither the trial court nor this court was positioned to enforce that result via an order to the town clerk.

Argued October 20, 2023—officially released January 23, 2024

*Procedural History*

Action for a judgment declaring that the named defendant exceeded her statutory authority as town clerk in determining which slate of candidates had been nominated by the Independent Party of Danbury in connection with the 2023 Danbury municipal election for mayor, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Medina, J.*, which rendered judgment for the plaintiff and ordered the named defendant to remove the names of certain candidates from the Independent Party of Danbury line on the ballot that the named defendant had submitted to the Office of the Secretary of the State; thereafter, the named defendant and the defendant Veasna Rouen filed separate appeals with

this court; subsequently, the court, *Medina, J.*, certified certain questions of law to the Chief Justice pursuant to General Statutes § 9-325, the named defendant and the defendant Veasna Rouen filed amended appeals, and the plaintiff filed cross appeals; thereafter, this court consolidated the appeals and cross appeals. *Affirmed.*

*Proloy K. Das*, with whom was *Candace V. Fay*, assistant corporation counsel, for the appellant-cross appellee in SC 20907 and the appellee in SC 20908 (named defendant).

*Eugene E. Glouzgal*, for the appellant-cross appellee in SC 20908 and the appellee in SC 20907 (defendant Veasna Rouen).

*Christopher M. Mattei*, with whom were *Colin S. Antaya* and *Luke Reynolds*, for the appellee-cross appellant in SC 20907 and SC 20908 (plaintiff).

*Opinion*

ROBINSON, C. J. This election appeal, which arises from a dispute over two slates of candidates each purporting to be the endorsed slate of the Independent Party of Danbury (Independent Party) for various municipal offices in the city of Danbury (city), raises two issues under the statutes governing nominations to municipal office by minor political parties in our state, namely, (1) the nature of the "certification" required by General Statutes § 9-452, which governs the submission of a party's list of nominees for municipal office to a town clerk, and (2) the form that notice to a town clerk of a party's meeting or caucus to nominate candidates for municipal office must take under General Statutes § 9-452a. The plaintiff, Roberto Alves, a candidate for election as mayor of the city, brought this action pursuant to General Statutes § 9-328 against the defendants, Janice Giegler, the city's town clerk, Dean Esposito, the city's incumbent mayor who is seeking reelection to that office, and Veasna Rouen, the chairperson of the Independent Party, challenging Giegler's decision on September 18, 2023, to file with the secretary of the state (secretary), pursuant to General Statutes § 9-461, a slate of candidates purporting to be the Independent Party's nominations of candidates for municipal office.[1] The challenged Independent Party slate consisted of candidates supported by the Danbury Republican Town Committee, including Esposito and Giegler (Esposito slate); Giegler did not file with the secretary a previously submitted Independent Party slate consisting of candidates supported by the Danbury Democratic Town Committee, including the plaintiff (Alves slate). After a three day court trial, the trial court, *Medina, J.*, issued an order on October 12, 2023, which, pursuant to General Statutes § 9-329b, directed Giegler to remove the Esposito slate that she had submitted to the secretary from the ballot (October 12 order).[2]

The parties sought review of numerous questions of law by this court pursuant to General Statutes § 9-325, and they also filed appeals and cross appeals[3] from the judgment of the trial court. After reviewing these questions and the trial court's October 16, 2023 memorandum of decision, which questions the trial court certified to the Chief Justice pursuant to § 9-325, we issued an order on October 17, 2023, modifying the questions. First, with respect to the notice issue under § 9-452a, did Giegler "[exceed] her statutory authority by failing to file with the secretary . . . pursuant to . . . § 9-461, the [Alves] slate . . . approved at the [Independent Party's] August 11, 2023 caucus?" Second, did Giegler "improperly [file] with the secretary . . . pursuant to . . . § 9-461, the [Esposito] slate . . . approved at the [Independent Party's] August 21, 2023 caucus on the ground that the filing with the Danbury town clerk's office failed to comply with . . . § 9-452

because it was not certified?" Following expedited briefing on these certified questions, we heard oral argument on October 20, 2023.[4] We conclude that the answer to the first certified question is "yes," and the answer to the second certified question is "no." Consistent with these answers to the certified questions, after oral argument, we issued an order, which we announced from the bench, affirming the judgment of the trial court and indicating that a written opinion would follow.[5] This is that opinion.

The record reveals the following facts, as found by the trial court, and procedural history. On August 4, 2023, Rouen had notice published in the Danbury News-Times (News-Times) of an "[e]ndorsement [m]eeting" of the Independent Party to be held at 6:30 p.m. on August 11, 2023, at the Maron Hotel. Although a copy of that notice, as published in the News-Times, is on file in the Danbury town clerk's office (town clerk), and Giegler attended the meeting personally, the trial court found that "no separate letter or other notification to the town clerk was sent by Rouen or anyone else."

The Independent Party held its first endorsement meeting on August 11, 2023. Minutes of that meeting prepared by Jennifer Dorin, the Independent Party's secretary and treasurer, indicate that Rouen called that meeting to order at 6:42 p.m. and adjourned it at 6:46 p.m. Dorin's minutes also indicate that, at that meeting, Justin Chan, a new member of the party, challenged Rouen with respect to whom would be permitted to vote at the meeting, causing "chaos" to ensue and the "room [to become] unruly" as Rouen announced that the party "would need legal counsel to clarify who is allowed to vote." At that point, Rouen and the deputy treasurer moved to adjourn the meeting, Dorin seconded the motion, and the "[e]xecutive [b]oard made the unanimous decision to adjourn the meeting." There subsequently was some disagreement about whether the meeting had been properly adjourned, and a set of minutes prepared by Gretchen Lombardi, a party member, indicate that those remaining in attendance nevertheless held a caucus and proceeded to nominate, by unanimous vote, the Alves slate as the nominees of the Independent Party.[6] Chan served as presiding officer of that caucus.

Subsequently, on August 15, 2023, Rouen sent a letter informing the town clerk of a "caucus" to be held at the Maron Hotel at 6:30 p.m. on August 21, 2023, "to nominate a slate of candidates on the Independent [Party] line for the 2023 Danbury municipal election." On August 16, 2023, notice to that effect was published in the News-Times.

On August 16, 2023, Lombardi, accompanied by an attorney, attempted to file with the town clerk a document consisting of the Alves slate of candidates, a copy of the August 4, 2023 published notice of the August 11, 2023 meeting, and a page captioned "CERTIFICA-

TION OF PARTY NOMINATIONS FOR MUNICIPAL OFFICE," stating that "it is hereby certified that at the Independent Party [c]aucus called for that purpose, held on August 11, 2023 . . . by a majority vote, the persons listed on the attached sheets were nominated as candidates for election . . . ." Chan signed that filing as caucus chair. The town clerk received, but initially rejected, that filing on August 16, 2023. That decision was based on Giegler's understanding that the endorsements might not be valid, in light of her personal knowledge of what had transpired at the August 11, 2023 meeting, along with the fact that Rouen had already noticed a second Independent Party caucus to take place on August 21, 2023.

The next day, August 17, 2023, Giegler reconsidered the rejection of the Alves slate and agreed to accept that filing based on legal advice that she had obtained from the secretary's office, despite her continued doubts as to its validity.[7] Giegler declined, however, to follow advice from the secretary's office that she contact the interested parties to inform them of the potential over endorsement issues. Giegler believed that instance to be the first time she had not followed legal advice from the secretary's office.

Subsequently, the Independent Party held a caucus on August 21, 2023, which resulted in a vote awarding the party's endorsement to the Esposito slate. On August 22, 2023, Rouen submitted the Esposito slate to the town clerk's office, with a cover letter providing: "As [c]hairman of the Independent Party . . . I hereby submit the [p]arty's official endorsements of candidates for the November 7, 2023 municipal elections. The nomination meeting was conducted on August 21, 2023, as advertised in the . . . News-Times." The cover letter further stated that the "Independent Party . . . is aware of a submission of an unofficial slate, which was never recognized or approved by the [e]xecutive [b]oard, and out of caution, has been vetoed and deemed invalid in accordance with the rules of the Independent Party . . . ." The town clerk's office stamped that document as "received for record" on August 23, 2023.

Attached to Rouen's cover letter was the document containing the Esposito slate; that document listed the names of the Esposito slate candidates under the heading "INDEPENDENT PARTY OF DANBURY: CANDIDATES' STATEMENT OF CONSENT." The trial court observed that "the individual proposed candidates all signed the sheet on which their names appeared weeks *before* the August 21, 2023 caucus." (Emphasis added.)

The "fifth page of the [document], over the signatures of Rouen as chairman and Dorin as secretary, recites that the events occurred '[a]t a [s]pecial [m]eeting of the Danbury Republican Town Committee . . . .' "[8] Thereafter, on September 18, 2023, Giegler submitted only the Esposito slate to the secretary pursuant to

§ 9-461.

On September 27, 2023, the plaintiff brought this action pursuant to § 9-328. The plaintiff sought (1) a judgment declaring that "Giegler acted without lawful authority when she determined which slate of candidates had been nominated by the Independent Party . . . and that, under [General Statutes] § 9-414, no such endorsement by the Independent Party . . . ha[d] occurred," (2) injunctive relief "compelling [Giegler] and the secretary . . . not to identify the [Esposito slate] candidates, including . . . Esposito, as nominees of the Independent Party . . . on ballots to be used in connection with Danbury municipal elections scheduled for November 7, 2023," and (3) "[s]uch other relief to which the plaintiff is entitled at law or in equity." Following a three day court trial, the court issued the October 12 order that, subject to the parties' stipulation as to four unaffected offices; see footnote 2 of this opinion; required Giegler "to remove from the November 7, 2023 ballot those names submitted by her on September 18, 2023, to the [secretary] consisting of candidates on the line assigned to the Independent Party . . . ."

The trial court subsequently issued a memorandum of decision expanding on the October 12 order. With respect to the questions certified for this appeal pursuant to § 9-325,[9] the trial court determined that whether Giegler properly had determined the Esposito slate to be "certif[ied]" for purposes of § 9-452 presented a question of statutory construction.[10] The court concluded that the Esposito slate "was not certified and, therefore, did not comply with § 9-452" because "[c]ertification must mean more than just using the words 'official endorsements.' At a minimum, it is a warranty by the issuer with consequences." Considering the "totality of the evidence," the court concluded that the Esposito slate was not "certified" because the signatures had been affixed weeks prior to the date of the caucus, and "the signature page clearly states [that] it came from a special meeting of the Danbury Republican Town Committee."

The trial court next turned to the Alves slate. Although the court concluded that Giegler had exceeded her ministerial authority by failing to file that slate with the secretary, the court nevertheless determined that the Alves slate was invalid because it was the product of a meeting that did not comply with § 9-452a, insofar as the presiding officer of the caucus had not provided the town clerk with notice of the August 11, 2023 meeting at least five days in advance. Observing that § 9-452a "requires such notice and, 'concomitantly,' legal publication in a newspaper of the meeting notice," the court rejected both the plaintiff's argument that Giegler's presence at the August 11, 2023 meeting was "enough to infer [that] she received notice" and the plaintiff's

reliance on "the alleged lack of prejudice from any noncompliance, as well as the newspaper publication as sufficient compliance." The court "agree[d] with Giegler and, on the evidence produced at trial, conclude[d] [that] the Alves slate did not satisfy § 9-452a."

Ultimately, the trial court concluded that "placement of the Esposito slate on the Independent Party . . . line would be improper" and that "placement of the Alves slate on the line of the Independent Party . . . would be equally improper."[11] Accordingly, the court acted pursuant to § 9-329b and ordered Giegler "to remove from the Independent Party line those names submitted by her to the [secretary] on September 18, 2023, excluding only those four candidates set forth in the parties' October 10, 2023 stipulation . . . ."[12] (Citation omitted.) This expedited appeal followed in accordance with § 9-325.[13] See footnotes 3 through 5 of this opinion and accompanying text.

At the outset, we set forth the standard of review. It is undisputed that the parties' claims on appeal concerning the various statutes governing the endorsement of candidates by minor parties, and the extent to which town clerks have discretion to administer those statutes, present questions of statutory interpretation guided by General Statutes § 1-2z and involve application of law to fact over which we exercise plenary review. See, e.g., *Cohen* v. *Rossi*, 346 Conn. 642, 662, 295 A.3d 75 (2023); see also id., 655–58 (discussing general principles governing court's authority to provide relief under § 9-328, particularly as applied to authority to overturn election results and to order new election); *Bridgeport* v. *Plan & Zoning Commission*, 277 Conn. 268, 275, 890 A.2d 540 (2006) (whether party complied with statutory notice requirements under General Statutes § 8-3 (a) was mixed question of fact and law subject to plenary review when facts were undisputed and dispute concerned "the trial court's application of § 8-3 (a) to those facts"). Particularly because challenges to the nominating process carry first amendment implications with respect to political parties' rights to choose their candidates, we recognize that "a court should be very cautious before exercising its power under the statute" in a manner that would vacate a party's nominations. (Internal quotation marks omitted.) *Cohen* v. *Rossi*, supra, 655; see, e.g., *Nielsen* v. *Kezer*, 232 Conn. 65, 87, 652 A.2d 1013 (1995) (discussing political party's first amendment rights "to identify the people who constitute the association . . . and to select a standard bearer who best represents the party's ideologies and preferences" (internal quotation marks omitted)).

Before turning to the parties' specific statutory claims, we begin by addressing the extent to which a town clerk has the discretion to accept or reject a minor party's filing of its endorsement of candidates. The town clerk's responsibilities are governed by § 9-461, which provides

in relevant part that, no later than seven days "following the date set for the primary for nomination at any election at which a municipal office is to be filled," the town clerk is required to file with the secretary "*a list of the candidates of each party for the municipal offices to be filled at such election nominated in accordance with the provisions of this chapter. . . .*" (Emphasis added.) The town clerk's responsibilities under § 9-461 are intended to aid the creation of the ballot, as the statute requires that the secretary provide a form for the town clerk to use in creating that list and that the town clerk include in the list "a statement of the total number of candidates for which each elector may vote for each office and term" and certify that he or she "has compared the name of each such candidate with the candidate's name as the candidate authorizes the candidate's name to appear on the ballot . . . and has verified and corrected the same." General Statutes § 9-461; see also General Statutes § 9-461 (requiring town clerk to "forthwith notify the [s]ecretary . . . of any errors in such list or of any changes in such list provided for in section 9-329a or 9-460").

We agree with the plaintiff that the town clerk has the ministerial obligation under § 9-461 to accept and to file with the secretary lists of minor party candidates that are facially valid under the terms of § 9-452. Under the terms of § 9-452, a list is facially valid if it is (1) timely filed at least sixty-two days before the election, (2) "certified by the presiding officer of the committee, meeting or other authority making such nomination," and (3) in the prescribed format with respect to the certification of the candidates' names, addresses, signatures, and office titles/districts. General Statutes § 9-452. The town clerk's function is limited to assessing the presence or absence of these facial items, and the town clerk has no discretion to consider the validity of the nominations or otherwise to determine whether a minor party has complied with the statutory scheme beyond these facial items. See *Butts* v. *Bysiewicz*, 298 Conn. 665, 678–79, 682, 5 A.3d 932 (2010) (holding that secretary lacked discretion to place probate judge candidate's name on ballot because of noncompliance with statutory deadline for receipt of party endorsements set forth in General Statutes § 9-388, and emphasizing that secretary's office "is not an appropriate forum for weighing evidence"); see also *Arciniega* v. *Feliciano*, 329 Conn. 293, 309–10, 184 A.3d 1202 (2018) (town clerk's acceptance of petition to qualify slate of candidates "bearing a purportedly incorrect address for one candidate [was] not . . . a ruling of an election official" for purposes of challenges under General Statutes § 9-329a because applicable statutes did not provide town clerk with role in reviewing candidates' addresses, meaning that "there was no procedure mandated by law that either [of the defendants, the city clerk and the registrar of voters] failed to apply or follow, such

that it could be said that either implicitly engaged in an incorrect interpretation of the statutory requirements"); *Wrotnowski* v. *Bysiewicz*, 289 Conn. 522, 528, 958 A.2d 709 (2008) ("the election statutes neither require nor authorize the [secretary] to verify the constitutional qualifications of a candidate"); *Caruso* v. *Bridgeport*, 285 Conn. 618, 646–47, 941 A.2d 266 (2008) (observing that "election officials generally do not conduct trial-type proceedings or issue formal decisions on matters that are presented to them" and that "they administer the entire election process on a day-to-day basis to ensure that it is fair and orderly, and complies with the various statutory requirements," in concluding that, "[w]hen an election statute mandates certain procedures, and the election official has failed to apply or to follow those procedures, such conduct implicitly constitutes an incorrect interpretation of the requirements of the statute and, therefore, is a ruling"); *Stefanowski* v. *Kohler*, Docket No. HHD-CV-22-6160145-S, 2022 WL 6406200, *7 (Conn. Super. September 15, 2022) (secretary's obligation under § 9-452 to receive certificate of nomination by Independent Party, to act "as the repository thereof, and [to] plac[e] the nominated candidates certified by the presiding officer of the caucus on the ballots submitted to the town clerks," is ministerial duty that does not constitute "a ruling of an election official" under General Statutes §§ 9-323 and 9-324 (internal quotation marks omitted)).

Although Giegler, as town clerk, lacked discretion to refuse the filing of facially valid slates, this preliminary conclusion does not complete our inquiry, as it ultimately falls to the courts acting under § 9-328 to determine whether the filings at issue in this case complied with the governing statutes.[14] With this background in mind, we turn to the parties' specific statutory claims.

I

We begin with the first certified question, which requires us to consider whether the trial court incorrectly determined that the Alves slate was invalid because it "did not comply with all of the notice requirements of § 9-452a . . . ." The plaintiff contends that § 9-452a "requires that notice . . . be received by the town clerk '[n]ot later than five days' before the nominating caucus" and that the trial court "did not specifically find that the notice was untimely." The plaintiff emphasizes that, "[t]o the contrary, the evidence supports the conclusion that the notice was timely. Giegler never testified or claimed that she failed to receive timely notice of the August 11 [2023] caucus." The plaintiff also argues that the copy of the newspaper notice in the town clerk's file is sufficient as a matter of form to satisfy § 9-452a because it provided the requisite "written notice of the date, time, location and purpose of the meeting to the town clerk."

In response, Giegler, joined by Rouen, asserts that

the Alves slate did not comply with the notice requirements of § 9-452a, thus precluding Giegler from submitting it to the secretary as a matter of law pursuant to § 9-461. Giegler contends that there is "no evidence of statutory written notice of the [August 11, 2023] meeting being made to the town clerk, and certainly not at least five days before the meeting," and that, under, *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 855, 930 A.2d 653 (2007), among other cases, "constructive notice would not satisfy the statutory written notice requirement . . . ." Focusing on the statutory requirements, and particularly the use of the word "[c]oncomitantly" in § 9-452a, Giegler argues that "there is no separate statutory notice" of the August 11, 2023 meeting in the town clerk's file and that "it is clear" from the language of § 9-452a, along with its legislative history, that the statute "requires two separate notices: (1) a written notice to the town clerk, [and] (2) publication of notice in a newspaper of general circulation." She emphasizes that Chan, who purported to be the "presiding officer" at the August 11, 2023 meeting that produced the Alves slate, does not claim to have filed the notices in question. Although we agree with Giegler's reading of the statute as requiring separate notices in the newspaper and to the town clerk, we conclude that a timely filed copy of the newspaper advertisement would satisfy § 9-452a and that the record does not establish, as a matter of law, that the copy of the News-Times advertisement was not timely filed with respect to the August 11, 2023 caucus.

Beginning with the statutory language, as required by § 1-2z, we observe that § 9-452a provides in relevant part: "Not later than five days before a minor party holds a party meeting to nominate a candidate for public office, *the presiding officer of such meeting shall give written notice* of the date, time, location and purpose of the meeting to, in the case of a municipal office, the town clerk of the municipality served by such office . . . . *Concomitantly*, the presiding officer of such meeting shall cause the written notice of such meeting to be published in a newspaper with a general circulation in the applicable town for such office. . . ." (Emphasis added.) As Giegler argues, the word "concomitantly" is the adverb form of "concomitant," which the dictionary defines as "[o]ccurring or existing concurrently; attendant." American Heritage College Dictionary (4th Ed. 2004) p. 297; see id. (noting that origin of "concomitant" is from Latin word for "to accompany"); see also Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/concomitant (last visited January 11, 2023) (defining "concomitant" as "accompanying especially in a subordinate or incidental way"). We conclude that the plain and unambiguous language of § 9-452a requires two separate written notices, one to the town clerk, and one published in a suitable newspaper.

Given this plain and unambiguous statutory language, we agree with Giegler that the two "written notices" are an integral part of § 9-452a and that constructive or even actual notice will not substitute for the written notice required by the statute. See *Chambers* v. *Electric Boat Corp.*, supra, 283 Conn. 855–58 (concluding that "written notice of claim for compensation" under Workers' Compensation Act, General Statutes § 31-294c (a), requires claimant to "reasonably inform the employer or [the Workers' Compensation Commissioner] of his or her intent to pursue a claim specifically under the state [Workers' Compensation Act]" and that notice requirement was not satisfied by claimant's providing notice of his intention to seek federal benefits, despite similarities in notice required under federal and state acts); *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 536–37, 829 A.2d 818 (2003) (declining to impute to employer manager's intent to seek survivor's benefits under Workers' Compensation Act because to do so would impermissibly read "written notice" provision out of § 31-294c (a)). This is particularly so given that the written notice requirement is part and parcel of the legislature's apparent intention to provide maximum notice to the public of the proceedings of minor parties that might affect the election ballot, rendering actual notice to the town clerk ultimately irrelevant.[15] See *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 378–80, 610 A.2d 617 (1992) (failure to file copy of text of proposed zoning amendment with town clerk, as required by General Statutes § 8-3 (a), was not excused by newspaper publication of amendment or fact that objectors' "very thorough presentation at the public hearing demonstrated that they had been adequately notified of the nature of the proposed change" because filing requirement is grounded in ensuring "fair notice" to "all interested persons" (emphasis omitted; internal quotation marks omitted)).

Turning to whether the requirements of § 9-452a were satisfied in this case, we note that the record reveals that the newspaper advertisement for the August 11, 2023 meeting was published in the News-Times on August 4, 2023. There is no claim that the content of that notice itself substantively would not satisfy § 9-452a if it had been separately filed with the town clerk in a timely manner. A separate copy of that advertisement is contained in the town clerk's file, but, unlike the other documents from the town clerk's file that were admitted into evidence, there is no time stamp on that notice indicating when the town clerk received it. Similarly, there is no testimony from any of the witnesses—either from Rouen, Chan, or Lombardi on behalf of the Independent Party, or Giegler on behalf of her office—about when or by whom it was filed.[16] Put differently, the record is silent as to when the notice to the town clerk in the form of a copy of the newspaper advertisement for the August 11, 2023 meeting was filed,

which likely explains why the trial court did not make a specific finding of untimeliness while concluding that the notice did not comply with § 9-452a.

The fact that the trial court did not make a finding that the August 11, 2023 notice was untimely in its analysis of the § 9-452a issue ultimately dooms any attempt to invalidate it on that basis in this court. The timeliness of a filing is ordinarily a finding of fact to be made by the trial court in the first instance, which is of particular importance in a proceeding in this court under § 9-325, in which our jurisdiction is specifically limited to "questions of law." *Wrinn* v. *Dunleavy*, 186 Conn. 125, 133–34, 440 A.2d 261 (1982); see, e.g., *Shelby* v. *Municipal Officers Electoral Board*, Docket No. 1-13-0789, 2013 WL 1919115, *6 (Ill. App. May 7, 2013) (whether "the nomination papers were timely submitted to the proper officer at the customary office within the customary office hours" was question of fact); see also *State* v. *Freeman*, 344 Conn. 503, 512–13, 281 A.3d 397 (2022) (whether arrest warrant was executed in reasonable period of time for purposes of tolling statute of limitations under *State* v. *Crawford*, 202 Conn. 443, 450–51, 521 A.2d 1034 (1987)); *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 744–45, 699 A.2d 73 (1997) (timeliness of intervention as of right), overruled in part on other grounds by *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 904 A.2d 137 (2006). Ordinarily, a party seeking to establish that a particular action is time barred has the burden of establishing that defense.[17] Cf. *Herman E.* v. *Robinson*, 292 So. 3d 561, 564–65 (La. App. 2019) (tax agency bears burden of proving that request for tax refund was not timely filed by certified mail within statute of limitations); *St. Paul Travelers Cos., Inc.* v. *Kuehl*, 299 Conn. 800, 815, 12 A.3d 852 (2011) ("[o]rdinarily, a defendant must plead the failure to meet the applicable statute of limitations as an affirmative defense, and the defendant bears the burden of proving the elements of the defense by a preponderance of the evidence"). With no finding by the trial court that the filing of the notice of the August 11, 2023 meeting was untimely, long established conventions of appellate practice, along with the strictures specific to review under § 9-325, preclude us from considering that factual issue in the first instance on appeal. See, e.g., *State* v. *Edwards*, 314 Conn. 465, 478–79, 102 A.3d 52 (2014). Accordingly, we conclude that the trial court incorrectly determined that the Alves slate was the product of a meeting that did not comply with the notice requirements of § 9-452a, and we further conclude that the trial court should have exercised its equitable authority to order that the Alves slate be forwarded to the secretary's office.[18]

## II

The second certified question asks whether Giegler improperly filed the Esposito slate with the secretary

on the ground that the Independent Party's August 22, 2023 filing did not "comply with . . . § 9-452 because it was not certified." Emphasizing Rouen's signature on a certain cover letter, which was printed on Independent Party letterhead and stated that the Esposito slate represents the party's "official endorsements," Giegler and Rouen argue that the trial court incorrectly concluded that the Esposito slate was not certified. They also rely on the plain meaning of the word "certify" and the fact that § 9-452 does not prescribe any particular manner of certification, along with the Appellate Court's decision in *Williams* v. *Freedom of Information Commission*, 108 Conn. App. 471, 948 A.2d 1058 (2008). In response, the plaintiff contends that a certification "is an attestation of the truth and correctness of the matter certified," and that certification, therefore, "is not the same as signing the list of nominees or stating that the list is 'official.' " The plaintiff emphasizes that "certifying" is an act distinct from "signing," given the importance of certification by party officials in aiding town clerks in verifying the authenticity of a purported slate of candidates. We agree with Giegler and conclude that the Esposito slate was "certif[ied]" within the meaning of § 9-452.

Beginning with the statutory text, as required by the § 1-2z analysis, we observe that § 9-452 provides in relevant part: "All minor parties nominating candidates for any elective office shall make such nominations and *certify and file a list of such nominations*, as required by this section, not later than the sixty-second day prior to the day of the election at which such candidates are to be voted for. A list of nominees in printed or typewritten form that includes each candidate's name as authorized by each candidate to appear on the ballot, the signature of each candidate, the full street address of each candidate and the title and district of the office for which each candidate is nominated *shall be certified by the presiding officer of the committee, meeting or other authority making such nomination* and shall be filed by such presiding officer . . . with the clerk of the municipality, in the case of any municipal office to be voted upon at a municipal election, not later than the sixty-second day prior to the day of the election. . . ." (Emphasis added.)

It is undisputed that the term "certify" or "certified" is not defined by the applicable statutory scheme. Contemporary dictionaries indicate that the ordinary meaning of the term "certify" is (1) "to attest [especially] authoritatively or formally," (2) "to present in formal communication, [especially] in a document under hand or seal," or (3) "to confirm or attest often by a document under hand or seal as being true, meeting a standard, or being as represented . . . ." Webster's Third New International Dictionary (1976) p. 367; see Ballentine's Law Dictionary (3d Ed. 1969) p. 188 (defining "certify" as "[t]o authenticate by a certificate; to vouch for a

thing in writing; a certificate is an authoritative attestation, and any form which affirms the fact in writing is sufficient"); see also American Heritage College Dictionary, supra, p. 236 (defining "certify" as "[t]o confirm formally as true, accurate, or genuine," or "[t]o guarantee as meeting a standard"). In our view, the plain meaning of the term is ambiguous for purposes of § 1-2z, as we view both parties' interpretations as reasonable with respect to whether a specific statement of veracity and correctness is required. See, e.g., *Adesokan* v. *Bloomfield*, 347 Conn. 416, 425 n.7, 297 A.3d 983 (2023).

Our research did not reveal any case law construing the term "certify" as used in § 9-452, and the legislative history of the statute, which was originally enacted in 1955 as Public Acts 1955, No. 106, is silent on that point. The Appellate Court's decision in *Williams* v. *Freedom of Information Commission*, supra, 108 Conn. App. 471, on which the parties heavily rely, is instructive. In that case, the Appellate Court, in a decision authored by former Justice David M. Borden, considered the meaning of the term "certifying" as used in the Freedom of Information Act, specifically with respect to a municipality's obligation under General Statutes § 1-210 (a) to supply "certified copies . . . ." Id., 479–81. The plaintiff in *Williams* argued that, under that statute, "properly certified copies . . . must have the following characteristics: the certification must attest that it is a true and complete copy of the record on file; the certification must be issued by the person who maintains the record or his or her authorized representative; the certifier must sign the record; the raised seal of the certifier must appear on each page of the record; and the 'certification shall be truthful.' " Id., 478–79.

The Appellate Court rejected the contention that the Freedom of Information Act "mandates such a comprehensive set of requirements." Id., 479. The court observed that, "[u]nlike some other statutes," such as General Statutes § 7-23 (certification by town clerk)[19] and General Statutes § 7-36 (certification by registrar of vital statistics),[20] "the [Freedom of Information Act] does not prescribe any particular form or content of a certification of records." Id., 480. The Appellate Court held that the "use of the term 'certified' [in § 1-210 (a)] suggests that as long as an official with legal authority to do so attests, or states in writing, that the records are true copies of the originals, he or she has issued a 'certified record' properly under the [Freedom of Information Act]." Id., 481. Relying on dictionary definitions for the general meaning of the term "certify,"[21] the Appellate Court observed that §§ 7-23 and 7-36, on which the plaintiff in *Williams* relied for those "additional requirements," "simply represent two instances in which the legislature has decided that a specific form of certification is necessary due to the nature and importance of the records. [The Appellate Court saw] nothing in the language or purpose of either of those

statutes or the [Freedom of Information Act] to suggest that the specific requirements of those statutes be imported into the provisions of [that] act." Id., 482.

Given the lack of specificity as to the required form of "[c]ertification" under § 9-452, we find *Williams* instructive. First, reading additional requirements into the statute's language runs afoul of the well settled rule of statutory construction that "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 776, 160 A.3d 333 (2017). Second, importing additional substantive requirements as to the form of the certification would contravene the maxim that "[a]mbiguities in election laws are [to be] construed to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on [e]lection [d]ay." (Internal quotation marks omitted.) *Butts* v. *Bysiewicz*, supra, 298 Conn. 675. Although the legislature could well prescribe a specific form of certification, such as requiring the submission under oath, it has not yet done so. In the absence of specific direction from our legislature as to the form such certification must take,[22] we adhere to our well settled reticence to demand the use of "talismanic words," which we have stated in a variety of contexts, and decline to hold that the absence of the word "certification" renders a filing defective as a matter of law. *Carpenter* v. *Daar*, 346 Conn. 80, 130, 287 A.3d 1027 (2023); see, e.g., id., 130–31; cf. *In re Election of the United States Representative for the Second Congressional District*, 231 Conn. 602, 652–54, 653 A.2d 79 (1994) (depository envelopes stamped with printed names and titles of town clerks, but lacking stamped facsimile of clerks' cursive signature, substantially complied with signature requirement in General Statutes § 9-140c (a) because it was consistent with statutory purpose of preventing absentee ballot fraud through commingling authorized and unauthorized ballots).

Turning to the document at issue, we observe that it is a cover letter printed on Independent Party letterhead and signed by Rouen in his capacity as the chairperson of that party. That cover letter indicates that the party was filing its "official endorsements . . . ." This degree of formality, with Rouen's averment that the endorsements are "official," meets the dictionary definition of "certify" because the filing involved the presentation of a "formal communication," and a confirmation that the endorsements "[met] a standard." Merriam-Webster Online Dictionary, supra. This is particularly so when the cover letter is read in context, with its averment that the attached endorsements are "official," as opposed to the previously filed competing set that Rouen sought to revoke in the same cover letter. Although one of the

annexed signature pages tellingly refers to the Danbury Republican Town Committee's support of that set of endorsements, and the other candidate signatures also predate the August 22, 2023 filing by more than one month,[23] this nevertheless does not detract from the fact that Rouen's letter—which is the controlling document as to certification—meets the broad standard applicable to that term under current statutory law. Accordingly, we conclude that Rouen's letter constituted the voucher necessary to comply with the statutory certification requirement under § 9-452, rendering the Esposito slate validly filed.

Given the ministerial role of the town clerk, we conclude that Giegler had no choice under the statutory scheme but to accept and to transmit to the secretary both filings—August 11, 2023, by Chan, and August 21, 2023, by Rouen—purporting to be the endorsements of the Independent Party, insofar as both were facially compliant with the governing statutes. It is undisputed that the presence of two facially valid slates had the effect of creating what, at the time, would be an over endorsement by the Independent Party; in such a case, there functionally would be no endorsement with respect to the affected offices by operation of § 9-414, which provides: "No town committee, caucus or convention shall endorse and certify to the clerk of a municipality, and no primary shall choose, more candidates for nomination to municipal office or more persons as members of a town committee than an elector may vote for in each such case." See also, e.g., *Lobsenz* v. *Davidoff*, 182 Conn. 111, 119–20 and n.5, 438 A.2d 21 (1980). Accordingly, the trial court's ultimate determination that neither set of endorsements should be placed on the ballot is correct, albeit for reasons different from those stated in the memorandum of decision. See, e.g., *Heisinger* v. *Cleary*, 323 Conn. 765, 776 n.12, 150 A.3d 1136 (2016) ("[When] the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Internal quotation marks omitted.)).

We acknowledge Rouen's argument that this result has deprived the Independent Party of its first amendment rights "to identify the people who constitute the association . . . and to select a standard bearer who best represents the party's ideologies and preferences." (Internal quotation marks omitted.) *Nielsen* v. *Kezer*, supra, 232 Conn. 87; see *Butts* v. *Bysiewicz*, supra, 298 Conn. 673–74. As was heavily discussed at oral argument before this court, the Independent Party's remedy for what Rouen characterizes as a "coup" by interlopers who joined the party mere days before the August 11, 2023 meeting lies within its own bylaws and any dispute resolution mechanism provided therein as required by

General Statutes § 9-387,[24] coupled with judicial enforcement of the party's internal resolution of that dispute. See *Price* v. *Independent Party of CT—State Central*, 323 Conn. 529, 543, 147 A.3d 1032 (2016) ("the judiciary has a role to play in promoting fair play even within the nomination process"); *Nielsen* v. *Kezer*, supra, 79 (describing political parties' "historical autonomy" and "broad discretion to select candidates" in concluding that, "[b]ecause the . . . interpretation of party rules [by the executive committee of the defendant political party] was an integral part of the deliberative process by which the committee resolved the endorsement dispute, the committee was entitled to wide latitude in interpreting and applying those rules"). Although Rouen argues in his brief that the Independent Party did in fact implement that process to veto the August 11, 2023 nomination of the Alves slate, and that the August 22, 2023 filing contained a veto message signed by Rouen with respect to the Alves slate while also stating that the Esposito slate represented the "official endorsements" of the Independent Party, oral argument before this court revealed that, in sharp contrast to the proceedings and rules at issue in *Nielsen*; see *Nielsen* v. *Kezer*, supra, 68–72, 78–82; the record, including the governing Independent Party bylaw provision that was admitted into evidence, was not at all clear with respect to how that process functioned or occurred in this case, lacking, for example, minutes of the August 21, 2023 meeting. In the absence of a record establishing how the Independent Party resolved the two competing slates in accordance with its own intraparty dispute resolution procedures, and a request for a court order challenging or enforcing that resolution, neither the trial court nor this court is positioned to enforce that result via an order to the town clerk.[25]

The answer to the first certified question is "yes," and the answer to the second certified question is "no."

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Also named as a defendant was Stephanie Thomas, the secretary of the state. The trial court subsequently granted the secretary's motion to dismiss the action against her, subject to a stipulation that she would "abide by any ruling of [the] court, directed to the town clerk or other parties, with regard to the substance of this matter . . . ."

[2] Specifically, the trial court ordered Giegler "to remove from the Independent Party line those names submitted by her to the [secretary] on September 18, 2023, excluding only those four candidates set forth in the parties' October 10, 2023 stipulation . . . ." (Citation omitted.) We note that those unaffected offices, as set forth in the October 10 stipulation, include the Board of Education (2-year term), Board of Education (4-year term), City Council, Ward 5, and City Council, Ward 6.

[3] In Docket No. SC 20907, Giegler appealed, and the plaintiff cross appealed, directly to this court from the judgment of the trial court pursuant to General Statutes §§ 9-325 and 51-199 (b) (5).

In Docket No. SC 20908, Rouen appealed, and the plaintiff cross appealed, directly to this court from the judgment of the trial court, along with its October 12 order, pursuant to §§ 9-325 and 51-199 (b) (5).

On October 17, 2023, we consolidated the appeals and cross appeals with the questions of law certified under § 9-325 and directed all filings to take

place in Docket No. SC 20907. See, e.g., *Keeley* v. *Ayala*, 328 Conn. 393, 399 n.5, 179 A.3d 1249 (2018); *Wrinn* v. *Dunleavy*, 186 Conn. 125, 133–35, 440 A.2d 261 (1982).

[4] The parties also filed motions to expedite these appeals. In light of our October 17, 2023 order directing briefs to be filed by October 19, 2023, and the scheduling of oral argument for October 20, 2023, we determined that no action was necessary on the motions to expedite.

[5] We note that the trial court had stayed the October 12 order and ordered Giegler not to distribute absentee ballots and applications to voters in connection with the October 5, 2023 statutory deadline that otherwise would have governed in this case. Giegler moved for review of that order. After oral argument, we ordered those stays terminated and granted the pending motions for review of those stays, but we denied the relief requested therein.

[6] Lombardi's minutes, which were filed with the secretary's office by email, state in more detail that the disagreement over voting rights was between Chan and Michael Sfranek, who is the chairperson of the Danbury Republican Town Committee and had taken the position that only Republicans could vote at the Independent Party meeting. Sfranek asked for the meeting to be adjourned. Lombardi's minutes indicate that Rouen, in presiding over the motion to adjourn, never asked for the votes of those opposed to adjournment, despite repeated calls for a roll call vote, a point of order request, and a call for the nay votes to be heard.

[7] Giegler spoke to Attorney Lewis A. Button III at the secretary's office. In a follow-up email, Button advised Giegler "to accept any endorsements that either side files with you. If there are more endorsements than offices to be filled on the ballot, then an over endorsement has occurred, and you may not place any candidates on the ballot for that party line. If this occurs, you should send a letter to both sides confirming the fact that you have received multiple endorsements and may not be able to put anyone on the ballot. We would not want an election official to choose among varying nominations, nor would we want to place a municipal officer in a role meant for the judiciary. I say this because if the Independent Party has a dispute regarding nominations, the merits of such a dispute must likely be tried in a court of law."

[8] Giegler testified that she did not notice the words "Republican Town Committee" when her assistant initialed and accepted the submission of the Esposito slate on August 23, 2023. Rouen did not know why the reference to the Republican Town Committee appeared on the Independent Party's endorsement of the Esposito slate as submitted to the town clerk but emphasized that the slate of endorsed candidates was indeed that of the Independent Party.

[9] Beyond the certified issues, the trial court rejected claims advanced by Rouen that (1) Giegler's decisions were not "rulings of an election official" for purposes of aggrievement under § 9-328, and (2) the preclusion on "over endorsements" under § 9-414 is inapplicable to minor parties. The trial court also rejected Giegler's claim that the doctrine of laches barred the plaintiff's action, which was brought nine days after Giegler's decision on September 18, 2023.

[10] Although the trial court determined that the plaintiff's challenge to Giegler's decision to submit the Esposito slate to the secretary on the ground that it had not been properly certified under § 9-452 was a question of statutory construction, it also spent considerable time in its memorandum of decision negatively assessing Giegler's credibility as a witness. Insofar as all of the issues in this appeal are determinable from the face of the record as questions of law, we agree with Giegler's argument that her credibility is of no moment to this appeal.

[11] Specifically, the trial court stated that it was rendering a judgment declaring that "Giegler improperly exceeded her statutory authority to invalidate the Alves slate, which, coupled with [her] decision to validate the Esposito [slate], created an impermissible over endorsement in violation of . . . § 9-414. In such a case, no endorsement should appear on the line in question." This conclusion is inconsistent with the trial court's determination that both slates failed to comply with the statutory scheme and, therefore, should not be on the ballot. Ultimately, this inconsistency does not affect the outcome of this case.

[12] See footnote 2 of this opinion.

[13] We take this opportunity to express our gratitude to all counsel, and to Judge Medina, for their professionalism in conducting these proceedings, which required trial and appellate review to be conducted on a highly expedited basis given the need to finalize, print, and distribute ballots in

advance of the November 7, 2023 municipal elections. We emphasize, however, that the scheduling of expedited proceedings such as this case should account for a meaningful time for appellate review, including briefing, oral argument, and decision.

[14] We acknowledge Giegler's argument that the language of § 9-461, which requires the town clerk to file with the secretary nominations made "in accordance with the provisions of this chapter," permits the town clerk to file only those lists that are statutorily compliant. With respect to compliance, that argument merely begs the question: who decides? Consistent with our understanding of the case law governing the duties of town clerks and the secretary, we do not understand Giegler to argue that this language gives town clerks the authority to conduct investigations or to make assessments that go beyond the face of the documents. Indeed, during her testimony before the trial court, Giegler conceded that a town clerk is required to accept filings but is not required "to seek minutes from groups" submitting endorsements. She further conceded that the position of town clerk does not afford her any investigative or adjudicatory powers concerning circumstances that have resulted in contested endorsements, or their ultimate validity.

[15] Assuming ambiguity in the statute for purposes of § 1-2z, we note that the legislative history indicates that the newspaper publication provision was added to § 9-452a in 2007 via the enactment of § 46 of No. 07-194 of the 2007 Public Acts, which was a broader election reform and security bill aimed at auditing voting machines. The limited commentary in the legislative history indicates that it was intended to conform the notice practices of minor parties to those of the major parties. See 50 S. Proc., Pt. 16, 2007 Sess., p. 5092, remarks of Senator Gayle Slossberg.

[16] We disagree with Giegler's argument that notice of the meeting could be filed only by Chan because § 9-452a requires the "presiding officer" of the meeting to file the notice, and he had served as chairperson of the caucus on August 11, 2023. This argument is inconsistent with the statutory scheme, in particular § 9-452, which contemplates certification of endorsements by a "presiding officer of the committee, meeting or other authority making such nomination," which would encompass the caucus, as distinct from the presiding officer of the meeting, who must give the premeeting notice contemplated by § 9-452a. As was discussed at oral argument before this court, it is entirely plausible for one individual to call and preside over the meeting, and then to turn over the chair to another individual for purposes of presiding over the nomination proceeding.

[17] Although Giegler accurately points out that no participant in the August 11, 2023 meeting, including Chan, Rouen or Lombardi, testified as to when the notice was filed with the town clerk's office, it bears mention that Giegler was uniquely positioned, in her role as town clerk, to establish when documents were filed with her office. In comparison to the other documents from the town clerk's office that were submitted into evidence, the potential timeliness issue in this appeal renders all the more significant the lack of a date and time stamp on the advertisement in her file. We simply decline to presume that the filing was not timely or properly filed. See, e.g., *Scovil* v. *Planning & Zoning Commission*, 155 Conn. 12, 18–20, 230 A.2d 31 (1967) (declining to conclude that absence of proposed zoning regulations from file in town clerk's office meant that they were not filed in advance of public hearing, because statute did not require their retention "for any given period after the public hearing," even though retention would have been better practice, given "the presumption that the [zoning commission] acted in accordance with [the] law and that the regulations were properly kept on file in the town clerk's office, available for public inspection, until sometime after the public hearing").

[18] As was discussed at oral argument before this court, the plaintiff's operative complaint did not specifically seek the relief of forwarding the Alves slate to the secretary's office for addition to the ballot, and a footnote in its memorandum of decision indicates that the trial court did not appear to understand the plaintiff to be seeking that form of relief. Nevertheless, we agree with the plaintiff that the relief he sought was broad enough to encompass that form of relief, particularly given the attention paid to the § 9-452a issue concerning the August 11, 2023 endorsements as the issues developed during the expedited trial proceedings. Indeed, the plaintiff seeks that relief on appeal, and neither party challenges the propriety of granting the plaintiff such an appellate remedy. In the absence of a challenge, we leave for another day any question concerning a court's equitable authority to add candidates to the ballot after *Butts* v. *Bysiewicz*, supra, 298 Conn. 665.

[19] General Statutes § 7-23 provides in relevant part: "No copy of record certified by the town clerk or assistant town clerk of any town shall be deemed valid in law unless the seal of such town is affixed thereto; and the town clerk of each town . . . shall affix the seal of such town to all certified copies of record . . . ."

[20] General Statutes § 7-36 (5) provides: " 'Certified copy' means a copy of a birth, death, fetal death or marriage certificate that (A) includes all information on the certificate except such information that is nondisclosable by law, (B) is issued or transmitted by any registrar of vital statistics, (C) includes an attested signature and the raised seal of an authorized person, and (D) if submitted to the department, includes all information required by the [Commissioner of Public Health] . . . ."

[21] Consistent with the dictionary definitions cited in this opinion, the Appellate Court observed that "this general meaning is consistent with the most apt definition provided by the dictionary for the word 'certify': 'To confirm formally as true, accurate, or genuine; testify to or vouch for in writing.' American Heritage Dictionary of the English Language (New College Ed. 1981)." *Williams* v. *Freedom of Information Commission*, supra, 108 Conn. App. 481; see id. (observing that plain language definition was consistent with "the purposes of the [Freedom of Information Act], namely, to make public records available to the public, except when specifically exempted . . . and to do so without undue burden on the provider of the records" (citation omitted)).

[22] For example, an Illinois statute requires that the presiding officer and the secretary of the nominating proceeding specifically certify under oath, in a document "annexed to the certificate of nomination," that their report of the nominations is "true to the best of their knowledge and belief . . . ." 10 Ill. Comp. Stat. Ann. 5/10-1 (a) (West 2022); see, e.g., *People ex rel. Vigilant Party* v. *Dolton*, 118 Ill. App. 2d 392, 395, 254 N.E.2d 832 (1969). Given the legislature's role as our state's primary source of public policy, and the existence of a comprehensive statutory scheme of election laws, we leave it to that branch to determine whether a more robust and specific certification requirement might serve to avoid conflicts such as those presented in this appeal. See, e.g., *Salce* v. *Cardello*, 348 Conn. 90, 115 n.12, 301 A.3d 1031 (2023) ("[i]n areas [in which] the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature" (internal quotation marks omitted)).

[23] As was discussed at oral argument before this court, the facilitation of the Independent Party's endorsements by the Danbury Republican Town Committee is entirely consistent with the Independent Party's determination that its participation in the political process might be most effectively accomplished via the cross endorsement of major party candidates, rather than through the nomination of separate candidates.

[24] General Statutes § 9-387 provides: "The state rules of each party shall prescribe the manner in which any dispute as to the endorsement by such party of a candidate for state, district or municipal office or for town committee member, or as to the selection by such party of a delegate to a convention, including conflicting claims to such endorsement or selection, shall be resolved."

[25] Even if we assume, without deciding, that the Independent Party bylaws allow its executive committee, or officers, to veto the action of the membership of the party itself, it would go far beyond the ministerial role of the town clerk to require her to choose between two competing sets of endorsements on the ground that one is proper under the bylaws of the party. In the absence of a court order declaring that only one set of disputed endorsements is valid under the governing rules of the party, the town clerk—in this case, Giegler—was obligated to accept and file both with the secretary. Cf. *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 723, 200 A.3d 1118 (2019) (observing necessity of naming secretary as party in case involving intraparty dispute as to nomination of candidates in view of "the necessity of an order directed to the [s]ecretary given her office's long established policy of not accepting a minor party's nomination for an office when there is a conflicting nomination under the same party designation").